W. M. FARMER v. C. E. MARVIN, *as Executor, etc.*
No. 12,344. (65 Pac. 221.)

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Death of Maker before Delivery.* Where a promissory note, signed by the maker without consideration moving to him, is placed in the hands of a third party with written instructions to deliver it to the payee upon the happening of a certain contingency, and in the event such contingency should not happen, then, upon the giving of indemnity thereafter to be agreed upon by both the maker and payee in the note, and, before the happening of the contingency or the indemnity to be given has been agreed upon, the maker of the note dies, it is *held*, that the agency of the third party to make delivery of the note ceased upon the death of the maker, and that the note did not become the binding obligation of the estate of the deceased.

Error from Labette district court; A. H. SKIDMORE, judge. Opinion filed June 8, 1901. Division two. Affirmed.

STATEMENT.

· ONE D. C. Marvin, being indebted to plaintiff in error in the sum of $600, executed his promissory note, secured by chattel mortgage upon property probably owned by the deceased, H. C. Marvin, his father. This note matured March 1, 1893. Plaintiff in error, having learned that a portion of the property mortgaged had been sold, and that D. C. Marvin was probably not the owner of the chattels at the time of the execution of the mortgage, proceeded to investigate the matter and to collect the note at its maturity. In company with a constable, a call was made at the Marvin ranch, where D. C. Marvin lived. D. C. Marvin accompanied plaintiff in error and the constable to Chetopa, where his father lived, and as a result of conferences held at the office of one Frye, a justice of the peace, and one Neale, an attorney at law, H. C.

Marvin executed to plaintiff in error the following promissory note.

"$640.00.          CHETOPA, KAN., March 1, 1893.

"On or before February 1, after date, I promise to pay to the order of W. M. Farmer, at the banking-house of Clark & Bates, Chetopa, Kan., six hundred and forty dollars, for value received, with interest at the rate of ten per cent. per annum until paid.

H. C. MARVIN."

As plaintiff in error had mislaid the note and mortgage given by D. C. Marvin, he executed the following receipt:

"CHETOPA, KAN., March 1, 1893.

"Received of H. C. Marvin $640, in full settlement of all claims, liens and demands held by me against D. C. Marvin, and more particularly a note for $600, secured by chattel mortgage on horses and cattle on the Marvin ranch, in Cherokee county, Kansas, which said note and mortgage are temporarily mislaid, but which said note and mortgage, when found, are to be delivered to H. C. Marvin, fully released.

W. M. FARMER."

This receipt and the promissory note executed by H. C. Marvin were deposited by the plaintiff in error and one Leroy Neale, an attorney acting for H. C. Marvin, with the bank of Clark & Bates, with the following instructions in writing:

"CHETOPA, KAN., March 1, 1893.
"*Messrs. Clark & Bates:*

"We this day deliver to you a note of $640, dated March 1, 1893, ten per cent. interest, due February 1, 1894, executed by H. C. Marvin to W. M. Farmer; also a written agreement signed by W. M. Farmer. It is understood that said note is given to take up a note for $600 with $40 interest, executed by D. C. Marvin to W. M. Farmer, and secured by chattel mortgage, which said note and mortgage are temporarily mislaid. When said note and mortgage are found

and presented to you fully released, you will deliver the note and agreement herewith to W. M. Farmer. Should the lost or mislaid note and mortgage not be found, then you can deliver this note to W. M. Farmer upon proper indemnity, as may hereafter be agreed upon between both parties.

W. M. FARMER.

LEROY NEALE, for H. C. Marvin.''

The lost note and mortgage were not found or presented to the bank. Before an agreement as to indemnity against the same was made, H. C. Marvin died, and the attorney, Leroy Neale, also died. After the death of H. C. Marvin, plaintiff in error presented an indemnity bond to the bank and demanded the note, which demand was refused. He also presented an indemnity bond to the executors of the estate of H. C. Marvin and demanded an order upon the bank to make delivery of the note to him, which demand was also refused. Plaintiff in error thereupon tendered said indemnifying bond, in the penal sum of $1000, made to the executors of the estate of the deceased, in the probate court, and presented his demand for allowance of said promissory note as a claim against the estate of H. C. Marvin, deceased. The probate court, upon a hearing, refused to allow the claim as a demand against the estate, upon the ground that, the promissory note not having been delivered, it did not constitute a valid claim against the estate. Thereupon plaintiff in error appealed to the district court.

Upon a trial in the district court, sitting with a jury, it was admitted by counsel for the estate that the sureties on the indemnifying bond tendered were responsible. The plaintiff in error, having made proof of the execution of the promissory note, receipt, and instructions to the bank, as above set forth, of-

fered the same in evidence, which offer was refused by the court.   At the conclusion of the claimant's evidence, a demurrer was sustained, judgment entered, and the executor, E. C. Marvin, the father of the deceased, prosecutes this proceeding in error.

*W. B. Glasse*, for plaintiff in error.

*A. D. Neale*, for defendant in error.

The opinion of the court was delivered by ·

POLLOCK, J. : The sole question for our determinaupon this record is, Does the promissory note in question constitute a valid demand against the estate of the deceased ?

Leroy Neale, the attorney, was the agent of the deceased for the purpose of making the deposit of papers in the bank, and for the purpose of instructing the bank as to the disposition of the same.   There his agency terminated..   The bank was the agent of both plaintiff in error and deceased.   The scope of this agency was distinctly defined and limited by the written instructions delivered to the bank.   Upon the happening of either of two contingencies—the presentation of the original papers made by D. C. Marvin, properly released, or the presentation of indemnity agreed on by both parties—the promissory note in question was to be delivered to plaintiff in error.   Before the happening of either contingency, H. C. Marvin died.

The claim made against the estate is founded upon this promissory note.   Before the note would become the binding obligation of the deceased, or against his estate, there must have been made a valid delivery. It is conceded such delivery was not made.   The bank had no interest in the transaction except to carry

out the written instructions of the parties as an accommodation. It is elementary that an agency not coupled with an interest in the subject-matter of the agency is revoked by the death of the principal. In this case the bank had no power to deliver the note after the death of H. C. Marvin, even in the event of the happening of the condition upon which delivery was contingent. Nor did the executors have the right or power to accept the indemnifying bond and make that a valid claim against the estate which was not such when the estate came into their hands, by delivery of the promissory note.

What the nature and character of the indemnity to be agreed upon by both parties, in the event of the failure to find the mislaid note and mortgage, would have been is not ascertained, and, from the very nature of the case, after the death of both H. C. Marvin and his agent, Leroy Neale, is incapable of ascertainment. However, in view of the fact that the debt for which H. C. Marvin was substituting his personal obligation was the debt of another—not his own, and in view of the further fact that no consideration for the making of the note in question moved to H. C. Marvin, it was his legal right, and the right of his representative, to stand on the strict terms of his agreement and refuse delivery until its conditions were performed. (*Ware v. Allen*, 128 U. S. 590, 9 Sup. Ct. 174.)

It follows that the judgment must be affirmed.

DOSTER, C. J., SMITH, J., concurring.