Cunningham, Presiding Judge.
The controversy out of which this case arose involves certain household goods valued at about $600. These goods were formerly the prqperty of Sherman W. Moody, a jeweler at Grand Junction, and the principal stockholder of the Moody Jewelry Company. The goods were located in Moody’s home, which had been leased, furnished, to Berry, the defendant in error. Moody and the Moody Jewelry Company were heavily indebted to the plaintiff in error, The Mesa County National Bank. To satisfy this debt Moody had caused an assignment to be made of the jewelry company stock, and had transferred to it certain equities in real estate, including the home. The agent of the bank was in possession of the stock of jewelry. Being dissatisfied with his transactions with the bank,- Moody, on or about April 21, 1909, employed Berry, who is an attorney, to bring an action or actions against the bank for the purpose of annulling the deeds *489 which, he had made to the bank or to the jewelry company, and, as compensation for such services, Moody made a bill of sale to the household furniture to Berry. Berry testifies that he received the bill of sale and transfer of the goods as full payment in advance for the services to be by him rendered for Moody. Shortly after making this bill of sale to Berry, Moody left the state and telegraphed Berry that he had decided to relinquish all claim to the goods, and directed Berry to turn over everything, presumably to the Moody Jewelry Company directly, and thereby indirectly turning it over to the bank. This telegram was followed by a.letter confirming it. Thereafter Berry rendered no services to Moody. Before receiving the telegram, he had made certain investigations, and had drawn a complaint, but had not filed the same, and said complaint never was filed. On May 6th, the bank brought an attachment proceeding against Moody and the Moody Jewelry ■ Company, and seized the household goods in question. Berry gave a custodian’s receipt to the sheriff, and, by an amicable arrangement of this sort, remained in possession of the goods. On August 4, 1909, Berry filed his petition in intervention in said attachment suit, claiming title to the household goods, by virtue of his bill of sale. Moody never made any appearance in the attachment proceeding, and the ease proceeded to trial on the merits of the petition in intervention which Berry had filed, and the-question presented for our consideration is the respective rights of the bank and Berry to the household goods. The trial court directed the jury to return a verdict in favor of the intervenor, which it did, and, from a judgment thereon in favor of the intervenor, Berry, the bank brings the case here on writ of error.
1. The bank introduced on the trial a bill of sale from Moody to the Moody Jewelry. Company, which bill of sale purported to transfer the household goods, and the bank now insists that as this bill of sale' antedated *490 the one under which Berry claims, it defeats the latter. In this attachment proceeding the bank admits, in its answer to Berry’s petition in'intervention, that Moody and his wife were the owners and in possession of the household goods at the time the bill of sale to Berry was made. Moreover, the bill of sale to the Moody Jewelry Company was never signed by Mrs. Moody, whereas the bill of sale to Berry was signed by both Mr. and Mrs. Moody, and Berry was in possession of the goods at all times, as tenant before taking the bill of sale, and claiming to be the owner thereafter. In these circumstances we are not disposed to allow the contention of the bank that the household goods belonged to the jewelry company.
2. At the time of the attachment suit, as we have already pointed out, the sheriff, after having levied on the property, by a written instrument appointed Berry custodian, without fees, compensation or cost to the sheriff or the plaintiff in the case, the plaintiff in error here. On this written instrument Berry endorsed the following: “I hereby accept the appointment as custodian of the above mentioned (meaning the household goods) on the terms and conditions therein stated, and I hereby waive and relinquish all right to fees or compensation as such custodian.” This endorsement was dated and signed by Berry. The bank now contends that this estops Berry from claiming title to the goods. There might be merit in this contention had it been pleaded by the bank, but no 'attempt was made by the bank, in its answer to Berry’s petition in intervention, to set up this custodian’s receipt or to plead estoppel.
“Matters of estoppel in pais to be made effective as a defense must be pleaded.” — Prewitt v. Lambert, 19 Colo., 11, 34 Pac., 684.
If the bank had pleaded the transaction between Berry and the sheriff in its answer to the petition in intervention, it is possible that Berry might, by replica *491 tion, have set up some satisfactory explanation and proven the same on the trial, thus avoiding its effect.
3. The principal contention between the parties, and the one to which they have devoted the greatest attention, may be thus stated: the bank insists that a client has a right at any time, and for any reason satisfactory to himself, to discontinue any litigation which he has instituted, and may halt and discharge his counsel in any contemplated litigation not yet instituted. There can be no serious question about the soundness of this contention. Indeed, it is not disputed by defendant in error. But the hank goes further, and insists that where an attorney has been paid in advance to commence a specific suit, and his client, exercising • his right to discontinue the preparation for such litigation, entirely abandons all intention of bringing the same, he has a right to rescind the contract of employment which has been entered into between himself and his counsel, and recover hack from his attorney the fees which he has paid in advance, which fees were by the contract to cover all services to be rendered, abated only by the reasonable value of the services of counsel that have been rendered prior to such rescission of the contract. This contention of the bank Berry stoutly insists is unsound; that, being ready and willing to proceed with the contract of employment, and to in every way carry out the conditions imposed upon him by its terms, he insists the attorney has the right to recover the full contract price, or where, as in this case, he has received in advance the full amount of the contract price, the law permits him to retain the same. The question thus stated is the one we must determine.
The trial court adopted Berry’s view", and refused to permit the bank to introduce any evidence showing the value of the services which Berry had rendered prior to the receipt of the telegram from Moody. That he, Berry, had not performed services equal in value to the entire *492 amount' of the fee which he received in advance is not and cannot be disputed.
Many cases have been called to our attention by counsel for the respective parties, but only a very few of them are directly in point. In some of the cases the counsel acquiesced in the act of his client in discharging him and substituting other counsel. In others the counsel was discharged for misconduct. Cases falling in either of these classifications are not in .point, and can throw no light .on the question here in dispute, since, of course, in such cases counsel could only recover on quantum meruit, if at all. No one will seriously contend to the contrary. In a large number of cases which have been called to our attention, the attorney had been employed on a contingent fee, and either before the casé was instituted, or before it had been finally determined, the client settled with his adversary. Since it would be impossible to determine whether the litigation thus settled would have been prosecuted to a successful determination, and since the law favors settlements, most, if not all, the courts have ruled that in circumstances of this character the attorney must recover for the value of his services, rather than upon the contract. Several courts have ruled that where an attorney has been employed upon a specific contract, and is to receive a sum certain for his services, but before the litigation contemplated by the contract has been concluded his client discharges him without cause, he may recover the full amount of the contract price. This doctrine appears to have been first laid down in Baldivin v. BenneM, 4 Cal., 392, and frequently affirmed thereafter by the supreme court of that state, and followed in New Tort and Washington. — Sessions v. Warwick, 46 Wash., 165, 89 Pac., 482; Webb v. Trescony, 76 Cal., 621, 18 Pac., 796; Bartlett v. Savings Bank, 79 Cal., 218, 21 Pac., 743, 12 Am. St. Rep., 139; 3 Am. & Eng. Enc. of Law (2nd ed.), 426; 4 Cyc., 984.
*493 In most, if not all, of these cases it will be found that the attorney was capriciously or unjustly discharged, and other counsel substituted, and the litigation, after his discharge, proceeded. We think cases determined on such state of facts are not in point. It is our view that where counsel is discharged because his client does not desire to press the litigation which counsel was retained to conduct, it cannot be said that the discharge was without cause, and under such circumstances it would seem that the attorney ’s right of recovery should be limited to the value of the services rendered prior to his discharge, plus his damages, if any he may have sustained, by reason of the rescission of the contract.
We are aware that in Riehl v. Levy, 43 Misc., 59, 86 N. Y. Sup., 464, the supreme court of Néw York, under facts very similar to those involved in the instant case, ruled differently, but as no authorities are cited in the Riehl ease, and little, if any, original reasoning indulged in, we are not disposed to follow the rule there announced. Moreover, the judgment rendered by the lower court in the Riehl case denied the attorney’s right to any compensation whatever, notwithstanding he had, as in the case now before us, rendered valuable services before his contract of employment was rescinded, hence the reversal of the opinion by the supreme court was proper for that reason.
The view we take finds support in the following cases: Henry v. Vance, 3 Ky. Rep., 72; Goodin v. Hays, 28 Ky. L. Rep., 112, 88 S. W., 1101; Polsley v. Anderson, 7 W. Va., 202, 23 Am. Rep., 613; Tenney v. Berger, 93 N. Y., 524, 45 Am. Rep., 263; Elwood & Lowrie v. Wilson, 21 Ia., 523; Seemes v. Clark, 73 Md., 19, 20 Atl., 127; Scobey v. Ross, 5 Ind., 445.
In an address delivered in the Page Lecture Series, 1909, before the senior class of the Sheffield Scientific *494 School, Yale University, Mr. John Brooks Leavitt of the New York bar used the following language:
“It is against public .policy to allow either lawyer or client to hold the other against his will. So sacred is this right in both that it cannot be overcome by contract. Public policy stands in the way. It may well be that where the services of a lawyer are of a clerical nature, and he has been engaged on a salary for a specified time, he may not be discharged before the time without liability for his salary in full, as in the case of any employe, but in respect of services as an adviser or in the conduct of litigation, either may terminate the relationship without bringing himself under any liability for payment, or for unperformed services.”
"We assume that Mr. Leavitt means that upon the termination of the relationship as fixed by the contract, the client, upon rescinding tlie contract, brings himself under no liability for payment for unperformed services. For services already performed, of course, the client is clearly liable, as well as for any damage which the rescinding of the contract may have occasioned the attorney, but in fixing such damages the loss of the attorney’s opportunity to earn a larger sum of money from his client, had he, the attorney, been permitted to continue the litigation, may not be taken into consideration. It is not necessary to a determination of the case before us that we unreservedly adopt and apply the .view expressed by Mr. Leavitt. Where a client discharges his counsel from some ulterior and reprehensible motive, rather than a motive which the law favors and encourages, it would seem but common •justice that he, the client, should not be permitted to profit thereby. Mr. Leavitt points out in this lecture, which appears in a little volume entitled, “Everyday Ethics” (Yale University Press, 1910), that in one very important case counsel for neither side called the atten *495 tion of the trial court or the supreme court to this question of public policy, but the suit was defended on the sole ground that no agreement of employment had been consummated. In very few of the cases which we have examined, and we have examined a large number not cited in the briefs, is the question of public policy presented or considered.
We confess we are unable to discover any difference in principle between a contract of employment wherein the amount of the attorney’s compensation is accurately determined and stated, and an employment wherein the amount to be paid has not been determined. The attorney who is discharged in the one case may lose as much as in the other. If he be permitted to recover the full contract price, when that sum is stipulated, no good reason occurs to us why he should not, under circumstances in all respects similar, be permitted to recover the full value for what his services would have been worth had he not -been discharged. It cannot be said that by fixing or agreeing upon the fee in advance the client becomes irrevocably bound to. his attorney, or that he.can only regain his freedom and be permitted to discontinue the litigation by paying the full fee without reference to the amount of services which have been rendered, nor can the fact that the attorney has been so fortunate as to collect his entire fee in advance be permitted to change or affect the rule.
To permit an attorney to collect in advance and retain the full fee stipulated in a contract where he has performed no service, and is prevented from performing any by conduct on the part of his client which the law professes to commend and encourage, would be to permit a broad principle founded on public policy to be totally eclipsed by a principle resting on the narrower basis of a selfish personal interest. The adoption of so sordid a rule would be a reproach upon our jurisprudence.
*496 It was the right, under the circumstances here detailed, of Moody to cancel his c'ontract with Berry, and it was Berry’s duty, upon receiving just compensation for the services which he had already rendered, to turn over the household furniture which he had received as payment in advance for the entire fee to Moody’s creditor, to the end that Moody’s liability might be thereby decreased.
For error in the exclusion of testimony offered on behalf of plaintiff in error for the purpose of showing the reasonable value of the services rendered by defendant in error prior to the rescission of his contract of employment by his client, the judgment of the trial court is reversed and the case remanded.

Reversed and Remanded.