### FRANCES C. SEIBERT v. JOSEPH N. SEIBERT.
### A. B. CLARFIELD, RESPONDENT.[1]

June 3, 1932.

No. 28,883.

*Sylvester P. Meyers,* for appellant.
*John B. Richards* and *Albert B. Clarfield,* for respondent.

HOLT, J.

Plaintiff, in this her action for divorce, obtained an order on respondent, her attorney who brought the action, to show cause why he should not be dismissed from the employment and her present attorney substituted and why respondent should not be ordered to return to her the moneys he had received on account as her attorney. Substitution of attorneys was ordered and likewise a return of any papers or documents of plaintiff intrusted to the respondent; but after a hearing the court discharged that part of the order to

[1] Reported in 243 N. W. 59.

show cause which related to the return to plaintiff of the $750 respondent had obtained on account of his services, and wholly denied plaintiff the relief asked for in that respect. Plaintiff appeals from the order last referred to.

It appears that plaintiff and her husband, as well as her father and mother, were residents of St. Paul. She brought an action for divorce in the district court of Ramsey county. She failed therein, and there was a judgment of dismissal entered October 30, 1930. She moved to Duluth, where resided one Atkinson, who seems to have been the cause of the trouble between herself and husband. The husband warned Atkinson that any attempt of his to disrupt the family would be avenged, and plaintiff's mother wrote Atkinson beseeching him to leave plaintiff alone. Within 90 days of the entry of the judgment of dismissal she and Atkinson came to the office of respondent and engaged him to procure her a divorce. At that time Atkinson gave his check for $50 as a retainer. Later, on March 11, 1931, he gave respondent a check for $100; on April 20, 1931, one for $250; and still later one for $400. Plaintiff was not present when the three last checks were given. Neither she nor Atkinson ever discussed with respondent what his charges would be. Respondent contends that from the first it was understood that he should try to negotiate a divorce by seeking to influence defendant, as well as plaintiff's parents and relatives, so that she might get a divorce without a defense being interposed. Respondent spent three days in St. Paul seeing plaintiff's husband, his attorneys, and plaintiff's relatives in his efforts to accomplish the purpose mentioned. Upon his return and reporting he received the $250 check. A little later another trip of three days was made to St. Paul with the same end in view. Just before that trip was undertaken the $400 check was given respondent. Over $50 was expended by respondent upon these two trips. Plaintiff contended that the payments were made for her by Atkinson, that he advanced or loaned her the money, and that as security she had insured her life and assigned the policy to him. Respondent contended that he was retained by both plaintiff and Atkinson and that the money received was for services

rendered both; that Atkinson was apprehensive that a suit for alienation might be brought against him by defendant.

It is quite clear that in the situation outlined plaintiff should not in a summary proceeding compel her attorney to return to her money paid him by Atkinson, the latter not being a party to the proceeding. It is true, a client may discharge his attorney at any time; and when he does so the attorney becomes entitled to recover, or to retain, if the whole fee has been paid in advance, only the reasonable value of the services rendered up to the discharge. Lawler v. Dunn, 145 Minn. 281, 176 N. W. 989. Here was no agreement as to the amount of compensation. And from the nature of the case, the manner in which the services were rendered, by whom the money was paid, and from the relation of the rendition of the services to the times of payment the court could well conclude that it was understood that the first $400 was payment in full for services rendered up to and including the first trip to St. Paul, and the last check for the second trip then in contemplation and immediately taken. Appellant relies on Mesa County Nat. Bank v. Berry, 24 Colo. App. 487, 135 P. 129. But that was a case where the attorney had received an agreed fee in advance and was then discharged before any services were rendered, except some preliminary investigation; and the court properly held that he could retain only the value of the services rendered prior to his discharge, plus his damages, if any he may have sustained by reason of the rescission of the contract. Here the court could well consider that the money paid, not by plaintiff but by Atkinson, was for services rendered both, and that it was not paid or received for future services but for the reasonable value of the services rendered up to the discharge.

Plaintiff claims also that respondent forfeited his right to compensation because he did not render honest and faithful services and was guilty of fraud and deception. The court upon the affidavits adduced could well reach a contrary conclusion.

Plaintiff submitted her right to summary relief upon affidavits. The evidence thus adduced was met by counter affidavits of respondent. The procedure did not call for findings of fact or conclusions

of law from the court. The memorandum accompanying the order clearly indicates that the court placed little reliance upon plaintiff's and Atkinson's affidavits. It reads:

"It appears that the payments to A. B. Clarfield, attorney for plaintiff, on account of attorney's fees and disbursements were made by one L. H. Atkinson, from time to time, as certain services were performed and disbursements made. It further appears that said payments were made pursuant to some arrangement between plaintiff and Atkinson. Clarfield further claims that Atkinson also employed him to represent said Atkinson's own interests in connection with the litigation and matters leading up to it. This latter claim is disputed by Atkinson but it is a matter of common knowledge that men do not ordinarily supply funds for divorce litigation without having some personal interest to serve. However that may be, the fact remains that all of the payments made by Atkinson to Clarfield, whether the same be treated as made wholly on behalf of plaintiff or otherwise, were voluntary payments and there is no claim or showing of any fraud on the part of Clarfield. An attorney has the right, in the absence of any fraud, to agree with clients with respect to the amount of his fees, and a voluntary payment may well be considered as an implied stipulation with respect thereto."

Upon the conflicting contentions shown by the affidavits presented, we think the learned trial court could rightly conclude that plaintiff was not entitled to receive back any part of the money paid respondent by Atkinson.

The order is affirmed.