## HODGES DRILLING CO. v. TYLER et al.
### (No. 9744.)

(Court of Civil Appeals of Texas. Fort Worth. May 21, 1921. Rehearing Denied June 25, 1921.)

1. **Appeal and error ⊕384(1)—Partnership's appeal bond sufficient to give court jurisdiction.**

Recitals in an appeal bond filed by defendant partnership having shown a desire on the part of all defendants to appeal, and the bond being signed not only by the firm name, but by both of its members individually, *held*, that such appeal bond is sufficient to give the Court of Civil Appeals jurisdiction to determine the appeal, particularly in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1609, providing that, when there is a defect of substance or form in any appeal bond, on motion to dismiss it, the court may allow an amendment.

2. **Parties ⊕40(2)—Intervener must show interest in subject-matter.**

To entitle one to intervene in a suit, he must show by proper averments that he has an interest in the subject-matter of the suit.

3. **Receivers ⊕3 — Receivership an auxiliary proceeding.**

In an ordinary civil action involving property rights between parties, the appointment of a receiver is merely an auxiliary proceeding, incidental to the relief sought; suit cannot be maintained solely to place property in the hands of a receiver.

4. **Parties ⊕40(2)—In creditors' suit against drillers of oil well for intervener, intervention improperly allowed.**

In suit against insolvent drillers of an oil well for appointment of receiver to finish the well in accordance with the terms of defendants' drilling contract with an intervener that plaintiff creditor of the drillers might collect his debt from them, the intervener not showing any interest in the subject-matter of the suit, *held*, that the intervention by the association for which the well was being drilled was improperly allowed; the suit not being in behalf of all creditors of the drillers to wind up their business.

5. **Receivers ⊕35(1) — Ex parte petition must show pressing necessity for haste.**

To entitle plaintiff to appointment of receiver on ex parte hearing, the petition must not only allege sufficient facts, but must show that there is no other remedy which will protect plaintiff, and that there is a pressing necessity for haste.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by Alfred Tyler against the Hodges Drilling Company, wherein the Pen-Breck Oil Association intervened. From an order appointing a receiver, defendant appeals. Order of appointment reversed, and receivership vacated.

Frank S. Roberts, of Breckenridge, and E. W. Bounds, of Fort Worth, for appellant.

Bateman, Goggans & Leaverton, of Breckenridge, for appellees.

DUNKLIN, J. The Hodges Drilling Company, a partnership firm which was engaged in the business of drilling oil wells, has appealed from an order appointing a receiver, who was clothed with authority to immediately take charge of all the assets of the firm, including drilling machinery, tools, and supplies of every description.

The suit was instituted by Alfred Tyler, doing business in the name of the Breckenridge Casing Crew, and on the same day plaintiff's petition was filed a plea of intervention was filed by the Pen-Breck Oil Association, designating itself as a "trust estate," each of said pleadings containing a prayer for the appointment of a receiver, the intervener adopting the allegations contained in plaintiff's petition of facts authorizing the appointment of a receiver, and in addition thereto alleging further facts to warrant that relief.

The appointment of the receiver was made without notice to the defendant on March 22, 1921. The order of appointment recited that leave to the intervener to file its plea, and that the receiver was appointed upon a consideration of the allegations in the plaintiff's petition and those in the plea of intervention, and, after hearing evidence thereon, plaintiff's petition and the plea of intervention were both duly verified.

[1] The appellees contend that this court is without jurisdiction to determine this appeal, upon the alleged ground that, as shown by the appeal bond, only the Hodges Drilling Company, and not the individuals composing that firm, has prosecuted an appeal, and that, since a partnership has no legal entity, it cannot, as a firm, independently of its constituent members, lawfully prosecute an appeal.

The appeal bond, after reciting the order of court appointing the receiver, contains this language:

"From which judgment the said Hodge Drilling Company, defendants, have taken an appeal to our honorable Court of Civil Appeals for the Second Supreme Judicial of the State of Texas, sitting at Fort Worth, Tex.

"Now, therefore, we, the said Hodges Drilling Company, a copartnership composed of S. T. Hodges, Jr., and John Haley, as principal and the other signers hereto, as sureties, acknowledge ourselves bound to pay to the said Alfred Tyler, plaintiff, and Pen-Breck Oil Association, as interveners, the sum of $200, conditioned that said Hodges Drilling Company shall prosecute their appeal with effect," etc.

The bond is signed "Hodges Drilling Company, Principal, by S. T. Hodges, Jr.," and by

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

F. E. Pearson, H. M. Harrison, S. T. Dodges, Jr., and J. W. Haley, as sureties.

We are of the opinion that the contention so made is without merit. The recitals in the bond clearly show a desire on the part of all the defendants to appeal, and the bond is signed not only by the firm name, but by both of its members individually. The fact that the individual members signed as sureties did not make their liability any less, and there were two other sureties also. The objection made is too technical to deprive the defendants of their right to be heard on appeal from the order complained of. Besides, article 1609, V. S. Tex. Civ. Stats., reads as follows:

"When there is a defect of substance or form in any appeal or writ of error bond, on motion to dismiss the same for such defect, the court may allow the same to be amended by filing in the said courts of civil appeals a new bond, on such terms as the court may prescribe."

No motion was made by appellees to dismiss the appeal for lack of a sufficient appeal bond, but the lack of jurisdiction of this court for alleged defects in the bond is made for the first time in briefs filed by appellees in reply to appellant's briefs and presented for the first time on a submission of the case on its merits.

In view of the fact that it clearly appears from the recitals in the bond that all the defendants were prosecuting an appeal from the order of the trial court, and since all those defendants signed the bond and became liable thereon, we perceive no sufficient reason why the article of the statute quoted above is not applicable; and we believe that this case is clearly distinguishable, on the facts, from the case of Style v. Lantrip, 171 S. W. 786, cited by the appellees.

[2] It is a familiar rule that to entitle one to intervene in a suit he must show by proper averments that he has an interest in the subject-matter of the suit. Irvin v. Ellis, 76 Tex. 164, 13 S. W. 22; Ryan v. Goldfrank, 58 Tex. 356; Rodrigues v. Trevino, 54 Tex. 198; Faubion v. Rogers, 66 Tex. 472, 1 S. W. 166.

[3] It is also true that in an ordinary civil action involving property rights between parties the appointment of a receiver is merely an auxiliary proceeding which is incidental to the relief sought, and that a suit cannot be maintained for the sole and only purpose of placing property in the hands of a receiver. Webb v. Allen, 15 Tex. Civ. App. 605, 40 S. W. 342; Hermann v. Thomas, 143 S. W. 195; T. & P. Ry. Co. v. Gay, 86 Tex. 582, 26 S. W. 599, 25 L. R. A. 52; High on Receivers, § 17.

The petition of the plaintiff contained allegations substantially as follows: The defendants entered into a contract with the Pen-Breck Oil Association by the terms of which they agreed to drill for that association what is commonly known as an oil or gas well upon a tract of 65 acres of land in Stephens county; the defendants agreeing to furnish labor, material, machinery, and appliances necessary to complete the well. Thereafter, at the special instance and request of the defendants, the plaintiff performed certain services in connection with the drilling on the well, for which defendants are indebted to the plaintiff, for the sum of $480, and also performed labor in connection with the drilling of another well for which defendants are indebted in the sum of $250, and defendants have failed to pay the plaintiff any part of the debts so owing to him.

The defendants are also indebted to many other parties for labor and material in connection with their effort to drill the well which they contracted to drill, and have failed and refused to pay such persons the amount they owe them therefor.

Upon information and belief, plaintiff alleged further that the defendants are now insolvent and without funds with which to pay their indebtedness to plaintiff and other persons, or to carry out and complete the drilling contract they made with the Pen-Breck Oil Association. It is further alleged that the defendants had given to plaintiff in part payment of the debt they owed him a worthless check for the sum of $100. The petition contains these further allegations:

"Plaintiff further shows that, according to his information and belief, the defendants, and each of them, are insolvent and are unable to finance and otherwise carry out and perform their said contract and to pay this plaintiff the amount due to him. Plaintiff shows that he has no adequate remedy at law by which to collect the amount due to him by defendants, and that he will suffer irreparable injury by reason of the facts hereinabove set forth unless the properties of the defendants are taken in charge by a receiver and operated under his supervision and direction, and on account of all of said matters and the fraud heretofore perpetrated upon this plaintiff by giving and delivering to him a check which was afterwards dishonored as above shown, this plaintiff shows the court that a receiver ought and should be appointed herein with authority and power to carry out and perform the contract of the defendants with the Pen-Breck Oil Association and pay off and discharge the obligations of said defendants from the proceeds of such performance. Plaintiff also shows the court that the necessity for the appointment of such receiver is immediate and urgent and that such appointment should be made without any delay whatever.

"Premises considered, plaintiff prays that upon hearing hereof the court make and enter an order herein appointing some suitable and proper person as receiver of the properties and assets of the defendants herein, which are located upon the lands hereinabove described, and which are being, or have heretofore been, described, and which are being, or have heretofore been, used in connection with the drilling

operations on said lands, and that such receiver be given full power and authority to perform and carry out the contract above mentioned and pay off the claims of this plaintiff and such other claims as may be properly due and established herein, and that such receiver be given such other powers and authority as are usual and incident to receiverships in cases of this nature, and as may seem right and proper to the court."

Further than as above stated, the petition contains no allegations to support the conclusion alleged that there is an urgent necessity for an immediate appointment of a receiver to take charge of the property in order to insure the collection of plaintiff's debt, and that unless such appointment is made plaintiff will suffer irreparable injury; nor does the petition contain any showing that a receiver, if appointed, could secure funds necessary to finish the contract of drilling which defendants had made.

In the plea of intervention filed by the Pen-Breck, Oil Association the allegations in plaintiff's petition were referred to and adopted as containing a showing of right for the appointment of a receiver. Furthermore, after alleging specifically the drilling contract made by defendants with it, which plaintiff had alleged, the plea of intervention contained further allegations to the effect that since the defendants began drilling the well contracted for they have pursued the work "at intervals," and have not given proper attention to the work, and have not given the work proper supervision, and have not prosecuted it actively and continuously, as required by the contract, and that defendants have been "desultory and careless about such drilling."

According to further allegations, defendants have not used some of the funds advanced by the intervener to them on said contract for the purpose of drilling the well, but have used it for other purposes and have left unpaid certain debts incurred by them on account of drilling operations. It was further alleged that numerous parties who performed labor for defendants are threatening to file liens on the lease upon which the well was drilled; that intervener, in order to prevent the filing of such liens, has advanced some $850 to pay off said claims, and defendants have failed and refused to reimburse the intervener therefor. It was further alleged that defendants had drilled the well to a depth of 1,700 feet, in doing which they had set 12½-inch casing to a depth of 1,535 feet, contrary to the instructions of the intervener not to set such casing to a depth lower than 1,200 feet. On account of the great weight of such casing and on account of the depth to which it had been set, the casing had collapsed, and the well had thereby been ruined and lost. After the collapse of the casing defendants made an unsuccessful effort to remove it from the well, and, failing to accomplish that result, they abandoned the well and "skidded" the rig and began another well, which apparently will not be a producing well because of the incompetency of the defendants to drill it properly, and because it is located too near the first well.

It was further alleged that in the drilling contract the defendants had agreed to pay intervener a penalty of $50 per day for their failure to finish the well within the time required by the contract, and that by reason of the breach of the contract defendants will become liable to the interveners in the sum of $25,000.

The plea of intervention contains this further allegation:

"This intervener further shows that under the terms of the contract between intervener and the defendants it is provided in substance that, if the defendants shall neglect or discontinue the work of drilling said well for the space of ten days, such neglect or discontinuance shall of itself be a forfeiture of all rights and claims of the defendants under said contract, without any notice or demand on the part of the intervener, and that said intervener shall have the right at any time, after such forfeiture, to take possession of said well and discontinue the drilling thereof, at its pleasure, dismantle or abandon the same, without any liability to defendants, if it so desires, and that at any time after such forfeiture, if it so elects, intervener might take possession of the well and tools and appliances of defendant and drill said well to completion.

"This intervener shows to the court that the defendants have in fact neglected and discontinued the work of drilling said well for a space of more than ten days, and that by reason thereof said defendants have forfeited all rights and claims under their contract with intervener, and this intervener has neglected to take charge and control of the tools, apparatus, and appliances of defendant on said lease, as is provided in said contract."

It was further alleged that during the suspension of the work on the well the defendants have left the rig and machinery unattended, thereby subjecting it to danger of destruction by fire; that, if the well contracted for is unreasonably delayed, intervener will be damaged in the loss of oil, which will be drawn from its lease by other wells on adjoining leases.

But the plea of intervention contains no allegation that a receiver of the property would probably be able to raise funds necessary to finish the well which defendants had contracted to drill, nor did the plea of intervention allege any facts other than those referred to above to show an urgent necessity for immediate appointment of a receiver to take charge of the property.

[4] Plaintiff's petition does not purport to be a suit in behalf of all of defendants' creditors, for the purpose of winding up their business and subjecting their assets to the payment of their debts generally. The same is true of the plea of intervention. In each

suit the chief purpose of the complaining party in desiring the appointment of a receiver was to have the receiver finish the well in accordance with the terms of defendants' drilling contract with the intervener, to the ultimate end that the pleader may, as a result of the completion of said contract, collect his debt. Under such circumstance and in view of the further fact that the intervened did not show any interest in the subject-matter of plaintiffs' suit, we believe that the intervention was improperly allowed.

But, even though the plaintiffs' petition should be construed as a suit in behalf of all the creditors, the defendants, in which the intervener as one of the creditors had a right, to join for the purpose of winding up defendants' business, having all their assets placed in the hands of a receiver to be sold and the proceeds thereof applied to the payment of their debts, nevertheless we do not believe that there was a sufficient showing of such an emergent necessity for an immediate appointment of a receiver as to authorize such an appointment on an ex parte hearing and without notice to the defendants.

In Security Land Co. v. South Texas Development Co., 142 S. W. 1194, the following is said:

"To entitle a plaintiff to the appointment of a receiver upon an ex parte hearing, the petition must not only allege facts sufficient to authorize the appointment of a receiver, but must further show that there is no other remedy which will protect plaintiff, and there is such pressing necessity for haste in making the appointment that plaintiffs would likely suffer irreparable loss if the appointment was delayed until notice was given the defendant and a full hearing had."

In Haywood v. Scarborough, 41 Tex. Civ. App. 443, 92 S. W. 815, the court used this language:

"If, under the allegations of the petition, it had been proper to appoint a receiver at all, clearly no case is made justifying such action without notice to appellant. In order to justify the appointment of a receiver, without notice to the adverse party, not only must a proper case be made for the appointment, but, in addition, the facts should be disclosed showing such pressing emergency and the existence of such circumstances as to render an immediate appointment without notice necessary for the protection of the rights of the applicant."

[5] Those excerpts contain correct announcements of the rule of law applicable in this case, and, tested by that rule, the allegations, one by the plaintiff and the other by the intervener, even if construed together, as the court did consider them, were insufficient to warrant the summary action of the court in appointing a receiver to take charge of the defendants' property, without giving them any opportunity to be heard. If, as alleged by the intervener, it had the right to take charge of the defendants' machinery and tools and finish the well, no reason is shown why it has not done so, nor why it cannot do so. The pleading contains no allegation of the defendants' refusal to permit such a course, and if the intervener has the right to accomplish the same purpose which could be accomplished through a receiver, it is in no position to invoke the aid of a court of equity by the appointment of a receiver.

For the reasons noted, we are of the opinion that the court erred in appointing the receiver, and therefore the order of appointment is reversed, and the receivership is now here vacated.