## ENOS, ET AL. v. KEATING

(No. 1409; October 16, 1928; 271 Pac. 6)

(Rehearing denied March 12, 1929)

218

*A. C. Allen* and *O. N. Gibson* for appellants.

*M. C. Burk,* for respondent.

RINER, Justice.

This cause has heretofore been before this court, being considered and an opinion being filed on motion to dismiss, 36 Wyo. 318, 255 Pac. 1. The motion was denied under the rule that, "the court will not assume, ordinarily, to decide the merits of the cause upon a motion to dismiss an appeal or proceeding in error." It will, therefore, not be here necessary to restate the nature of the case, as that is very

fully set out in the opinion above mentioned. Such parts of the record as may be needful, supplementary to the statement of facts contained in that opinion, will only be used.

To obtain a reversal of the order of the trial court under review, it is argued that the contract of employment entered into between Enos and his counsel constituted either a partial equitable assignment or an equitable lien upon the alleged cause of action vested in Enos. The verbatim language of the agreement signed by the latter as regards compensation of the attorneys is as follows:

"I hereby stipulate and agree that you may retain as and for your compensation, one-half of all sums of money which you may collect on my behalf, or one-half of all the property hereinabove described which you may recover on my behalf, with such costs as may be awarded in any action instituted by you on my behalf, and I further stipulate and agree that for all your services performed by you as my attorneys, in my capacity as client, you shall be entitled to receive and retain the reasonable value of your services, not exceeding, however, one-half of the moneys or the land which you may recover.

"It is understood that you shall be entitled to receive compensation only out of any moneys or lands which you may recover or secure for me personally."

Obviously this contract, by its terms, does not undertake to establish a lien upon, nor does it purport to be an assignment of, the cause of action involved in the suit; it is merely a contingent fee contract for services of counsel in the proposed action. That action, if successful, would simply have revested the title to the land in Enos; it would not have secured a money judgment. At the time Enos severed his connection with counsel, the agreement was purely an executory one, so far as the procurement of a judgment was concerned. In 6 C. J. 742, Sec. 317, upon very considerable authority cited in the appended notes, it is said:

"An executory agreement between a client and his attorney that the attorney shall receive a certain portion of what is recovered will not, it has generally been held, give the attorney any legal or equitable interest in the cause of action or claim, unless there is an express stipulation to that effect."

In Spellman v. Bankers Trust Co., 6 Fed. (2d) (C. C. A. 2d Cir.) 799, where an attorney sued, claiming to be an equitable assignee of a part of an estate, by virtue of a contingent fee contract with a claimant of the said estate—the widow of the deceased owner thereof, it was said:

"But it is argued that the appellant is an equitable assignee by virtue of this agreement. A contingent fee agreement does not constitute a legal assignment. Here the claim is that the equitable assignment arises by virtue of a phrase that the widow assigns to the plaintiff a one-half interest in and to all her right, title and claim, etc. There is no actual assignment or transfer of the widow's interest. * * * An agreement to pay a certain sum out of that which one is entitled to receive from a designated fund, when received, does not operate as a legal or equitable assignment, since the assignor in either case retains control of the subject-matter. Whether the debtor would be justified in paying the debt, or the portion contracted about, to the person claiming to be the assignee, is the test. Fairbanks v. Sargent, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475. And to pay a debt out of a designated fund does not give an equitable lien upon the fund, or operate as an equitable assignment thereof. Thomas v. N. Y. & Greenwood Lake Ry. Co., 139 N. Y. 163, 34 N. E. 877."

In Wheeler v. Fronhoff, (Tex. Civ. App.) 270 S. W. 887, where the agreement was that the appellants "are to have one-third of any sum of money or property, or both or either, that may be recovered or paid as a compromise of said suit for their services therein," and it was claimed that this arrangement transferred to appel-

lants an interest in the cause of action and in the subject-matter of the suit, the court said:

"That language, it seems to us, should not be construed as evidencing an intention that title to an interest in the property or cause of action therefor was thereby and then to pass to appellants, and it is plain under the authorities, that unless the language evidenced such an intent the agreement did not operate to then pass anything to appellants. Cotton Co. v. Simmons, 39 Tex. Civ. App. 189, 87 S. W. 842; 2 Pomeroy's Eq. Jur., Sec. 1280; 6 C. J. 742 et seq., and authorities there cited.

"The view most favorable to appellants which can be taken of the language of the agreement, we think, is that it showed that appellants were to own one-third of any money or property recovered by B. Fronhoff, or paid to him as a compromise, when, and not before, same was so recovered or paid. In that view, if he did not recover anything, and if nothing was paid to him in settlement of his claim, appellants, of course, acquired nothing because of the agreement."

In Besteiro v. Besteiro, 7 S. W. (2d) 124, the court last above cited reiterated its view in this language:

"It was stipulated, simply, that he was to have a 'reasonable contingent fee, to be based on a percentage of the property recovered.' This agreement did not operate as an assignment of the subject matter of appellant's cause of action, or create an equitable lien upon the property claimed by reason of that cause of action. 6 C. J. 742, 778; Finkelstein v. Roberts, (Tex. Civ. App.) 220 S. W. 401; Cotton Co. v. Simmons, 39 Tex. Civ. App. 189, 87 S. W. 842; Drilling Co. v. Tyler, (Tex. Civ. App.) 233 S. W. 548."

In Boogren v. St. Paul etc. Co., 97 Minn. 51, 106 N. W. 104, 3 L. R. A. N. S. 379, there is employed this language in the opinion:

"Even though the cause of action had been assignable, this contract is insufficient to constitute an assignment. It does not purport to be an assignment. It is merely an

agreement by the plaintiff to pay to his attorney a certain portion of what the plaintiff may recover from the street railway company. Boogren is to receive the entire amount of the verdict and pay to Gregory 50 per cent of all money thus received. The contract creates a personal obligation on his part to pay Gregory one-half of the amount thus received. It imposes no obligation on the part of the company towards Gregory. He has no lien and no interest in the cause of action. It is thus immaterial that the company knew of the existence of his claim. Even an intent on the part of the railway company to deprive the attorney of his fees and disbursements cannot deprive the client of the right to agree to a settlement and to dismiss the action.''

Cameron v. Boeger, 200 Ill. 84, 65 N. E. 690, is to the same effect, the court saying in the course of the opinion in the case:

''Upon an examination of the contract set up in the intervening petition, it will be seen that, by the terms of that contract, there was no assignment, equitable or otherwise, to the appellants of any interest in the subject-matter of the suit. The agreement provides that appellants shall receive, as 'compensation for their services in and about the prosecution of said litigation on behalf of the first parties hereto from the first parties hereto one-third of whatever is realized or obtained as the result of any such litigation, or, if any settlement is made pending any such litigation, then the second parties hereto shall receive one-third of whatever amount is obtained or received as a settlement of said matters in litigation,' etc. The contract was a personal agreement on the part of the Oakland Cemetery Association and its president, being 'the first parties hereto,' to pay to appellants fees, the amount of which was to be determined by what was recovered. Under the authorities, there is a clear distinction 'between an actual assignment of a part of a debt or claim or fund, and a mere promise or agreement to pay a part of such debt or claim when collected or recovered, or pay out of such fund.' Story v. Hull, 143 Ill. 506, 32 N. E. 265. Here, the agreement that the compensation of appellants should come out of the amount realized as the result of the litigation was simply a promise by the as-

sociation and its president that they would pay such compensation out of the proceeds of the litigation, and depended for its performance upon the mere personal responsibility of the promisors. Where there is an agreement by a party to pay his attorney a reasonable compensation for his legal services out of the proceeds of the litigation, such agreement, depending as it does upon the mere responsibility of the employer, does not operate as an equitable assignment of any portion of the fund sought to be recovered in the suit.''

See also Christmas v. Russell, 14 Wallace 84, 20 L. Ed. 762, and Wilson v. Van Horn, 114 Wash. 109, 194 Pac. 561, where previous decisions of that court are cited to the same purport as those from which we have quoted. Our conclusion is then that counsel for Enos, upon his severance of his relations with them, had neither an equitable assignment of or lien upon the cause of action wherein suit was commenced by them, by virtue of the contract for compensation executed between counsel and client.

Can it be said that the attorneys had a lien upon the subject-matter of the action by reason of their serving notice to that effect upon Enos prior to the dismissal of the action in which they were employed by the latter? We have already seen that no equitable lien arose by virtue of the contract between the parties, and hence it becomes necessary to inquire as to whether one would exist thereunder by law.

Section 4885, W. C. S. 1920, provides:

''An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession, in the course of his professional employment, upon money in his hands belonging to his client, and upon money due to his client, and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party.''

It has been held under a statute in terms identical with ours, that legislation of this character should not be considered merely as providing a remedy to enforce a common law right, but as superseding such right. Ahalt v. Gatewood, 109 Kans. 328, 198 Pac. 970 and cases cited. And this would seem to be so, as the language of the enactment appears to cover both kinds of common law liens in favor of attorneys, both the retaining and the charging. An examination of the phraseology itself of the law makes clear that it can hardly apply to a situation such as the case at bar presents, for in this connection it will be recalled that the action instituted by counsel for Enos was one for the cancellation of the deed executed by him to Keating, and for the re-conveyance and possession of the land it covered. No money judgment was claimed nor was there any fund in the hands of the attorneys which they could retain.

Holmes v. Waymire, 73 Kans. 104, 84 Pac. 558; 9 Ann. Cas. 624, was a suit to enforce an attorney's lien under the Kansas statute, which, as pointed out, is similar to ours. As attorney for Waymire, Holmes had previously brought a suit against one Summerfield, for the specific performance of a contract for the sale and conveyance of land. A short time after commencing the suit, Holmes served on Summerfield a notice of an attorney's lien on the land in controversy for his fee in the case. Thereafter and before trial, Waymire and Summerfield settled their differences and caused the suit to be dismissed without consulting Holmes or securing his consent. This action was thereupon instituted by Holmes against Waymire and Summerfield, Summerfield's attorney and a party to whom the land had been sold. It was sought to have the statutory attorney's lien foreclosed and declared a first lien on the land which was involved in the suit for specific performance. But the court, holding that "no reasonable interpretation of the statute can make the lien extend to the land over which the parties were contending, said:

"The plaintiff insists that the lien claimed by him falls within the second class, and that it attached to the land which was the subject of controversy. The lien is special in its character, and, being statutory, can only attach to the things and upon the conditions prescribed by the statute. As will be observed, the attorney's lien prescribed is not given upon the subject-matter of the action, but is restricted to money due the client and in the hands of the adverse party. Even under the common law an attorney who commenced a suit did not acquire a lien on the subject of action, nor was he allowed a lien on real estate where it was the thing in dispute. (Citing many cases.)

"It is true, as is contended, that a judgment determining the amount of money due is not essential to the existence of a charging lien, and also that a collusive settlement and dismissal of a suit will not operate to defraud an attorney of his fee. Under the statute the lien is not upon a judgment, but is upon 'money due.' In K. P. Rly. Co. v. Thacher, 17 Kan. 92, the court, in speaking of the statute, said:

'It does not specify for what the money must be due, nor limit the lien to any particular class of liability or form of action. Wherever an action is pending in which money is due, the attorney may establish his lien. And in an action the verdict and judgment do not create the liability, do not make the 'money due.' They are simply the conclusive evidence of the amount due from the commencement of the action.'

"But here money was not the subject of the litigation nor can it be said that there was any money due Waymire by the adverse party at any stage of the proceeding."

We are inclined to the view that no legal lien was fastened upon either the cause of action or the subject-matter thereof by the service of notice of lien shown by the record before us.

But it is said that where plaintiff's attorney has neither a statutory or contractual lien upon the cause of action to secure his compensation, the court should refuse to dismiss the action, if the application is made pursuant to a fraudulent agreement to dismiss entered into between plaintiff and defendant for the purpose of depriving defendant of compensation, and that the attorney will be substituted as

a co-plaintiff or allowed to intervene and prosecute the litigation to judgment. It may be said before proceeding further, that the matters involved in this contention are beset with great apparent confusion in the decided cases, notwithstanding the efforts that have been made to clarify it.

The practice which is thus urged should be adopted, while allowed in some jurisdictions, has received severe criticism at the hands of courts and judges of high authority. In Coughlin v. New York Central etc. R. Co., 71 N. Y. 443, 27 Am. Rep. 75, Judge Earl said this:

"It is impossible to ascertain precisely when this practice commenced, nor how it originated, nor upon what principle it was based. It was not upon the principle of a lien, because an attorney has no lien upon the cause of action before judgment, for his costs; nor was it upon the principle that his services had produced the money paid his client upon the settlement, because that could not be known, and in fact no money may have been paid upon the settlement. So far as I can perceive, it was based upon no principle. It was a mere arbitrary exercise of power by the courts; not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases."

In Fischer-Hansen v. Brooklyn Heights R. Co., 173 N. Y. 492, 66 N. E. 395, the same court remarked concerning the same matter:

"This form of relief is clumsy and illogical, because it authorizes the trial of a dead law-suit in the interest of one who never owned the claim upon which it was founded. It was a device of the courts, not of the legislature, and sprang from the necessity of providing some remedy against fraudulent settlements."

In Coughlin v. New York Central etc. R. Co., supra, there was also used this language:

"It is therefore beyond dispute, that the plaintiff's attorney had neither a legal nor an equitable interest by way of assignment or lien on the cause of action. The

defendant was not asking any favor of the court. It was in court simply insisting upon its settlement with the plaintiff as a defense to his cause of action. Therefore if the attorneys are entitled to the protection they now seek, it is only by the exercise of the extraordinary power of the court, to which I have first above alluded, and I am prepared to say that such power should not be exercised in a case like this. It has not been conferred upon the courts by statute, usage or common law. Its exercise to secure to an attorney the statutory fees, small in amount and easily ascertainable, was just and proper, and could lead to no abuse. But to exercise it so far as to enforce all contracts between clients and attorneys, however extraordinary, is quite another thing.''

We have carefully examined the authorities and cases cited on the point by counsel, as well as many others which could have been mentioned. In many states where a procedure of this character is permitted, it is to be observed that there exist statutes which expressly give attorneys a lien upon the client's claim or cause of action. Some statutes, in addition to giving such a lien, distinctly forbid a client to settle or dismiss his cause of action without his attorney's consent. The states of Alabama, Georgia, Utah, New York, Kentucky, Tennessee, Wisconsin, Missouri and Arkansas, appear to have statutes of this general character. Other courts have allowed the procedure we are discussing, where the contract of employment in apt terms gave a lien upon the cause of action or purported to assign a portion of it. This practice originally arose, as Judge Earl pointed out, when a statute or rule of court fixed counsel fees, taxed them as part of the costs of litigation, and such fees and costs were not large. Where legislation or agreements such as we have above referred to exist, there would seem to be some logic in permitting the attorney to come into the case, for he is then a real party, having a definite interest in the cause of action. As said in Lamont v. Washington etc. R. Co., 2 Mackey 502, 47 Am. Rep. 268:

"In the administration of the law in England, and more or less in this country also, every step taken in a case involves not only the payment of a compensation to the officers of the court, but also the earning of fees by the attorney of record. If the plaintiff recovers judgment, these fees and costs of his attorney are included in his judgment and become part of it, and as fast as they are earned, the suit becomes to that extent the suit of the attorney. He thereby virtually becomes a party to the suit, *quoad* his legal fees; and it is very proper that the court should say to the defendant, 'you cannot settle this suit until you settle the claims of all the parties on the record,' and the attorney being, *quoad* these fees, a party on the record, his fees must be provided for before the case can be dismissed. But the reason would not apply to a collateral contract between the attorney and his client."

It has been frequently ruled that where attorneys do not have a lien upon or interest in the cause of action of their client, either by statute or by contract, that their rights must be enforced in a separate suit and this we believe to be the better practice. For example, in Cameron v. Boeger, supra, it is said:

"Inasmuch as the agreement set up by the appellants in their intervening petition did not amount to an assignment to them of any portion of the subject-matter of the suit, or of what might be obtained as the result of the suit, and conferred upon them no lien for their fees, they did not show that they were entitled to be made parties to the chancery suit."

In Boogren v. St. Paul City R. Co., supra, the court remarked on this subject:

"It has been said that the court will protect the attorney of a party to an action against a collusive settlement in fraud of his rights. This rule applies when the attorney has acquired a lien. Weicher v. Cargill, 86 Minn. 271, 90 N. W. 402. The language used in the New York and Georgia cases must be construed in the light of the

statutes of those states, which give the attorney a lien upon the client's cause of action. 3 Am. & Eng. Enc. Law, 2d Ed. p. 468. There are also serious practical difficulties in the way of such a procedure when the action is to recover unliquidated damages. The power to arrest or rescind the effect of a settlement is cautiously exercised in respect to suits for debts actually owing; and the power would be more cautiously applied to actions for torts, where it would be impracticable for the court, upon the opposing representations of the parties and without hearing the proofs, to ascertain whether there was a just cause of action, or whether there was ground to distrust the justness of the settlement. The whole case would have to be tried before the court could pronounce that the suit was properly instituted, and that it afforded *prima facie* ground for the award of costs. As said by Betts, J., in Peterson v. Watson, 1, Blatchf. & H. 487, Fed. Cas. No. 11,037, 'That manifestly could never be done without serious inconvenience and expense; and the better practical rule will doubtless be to leave the proctor to look to the responsibility of his client alone. Ordinarily he will take the precaution to secure himself against the mischances of suits of this character; and, if he does not, no urgent equity is thereby created for an extraordinary interference on his behalf by the court.' The policy of the law favors the adjustment of claims and the termination of litigation, and the courts are not disposed to limit the right of parties in this respect. This practice may occasionally work a hardship upon attorneys, but it is nevertheless a salutary rule. An attorney whose rights are prejudiced must look to his client for relief, or in a proper case proceed directly against the party by whose fraudulent conduct he has been injured.''

In the Besteiro case, supra, after using the language we have hereinabove quoted, the court further said:

''These conclusions lead to the further conclusions that under the allegations in his petition appellee had no right to intervene in the suit, or to interfere with the right of the parties to compromise, settle, or otherwise dispose of the suit.''

In Wheeler v. Fronhoff, supra, it was said:

"The judgment complained of is not erroneous, unless the legal effect of B. Fronhoff's agreement, set out in the statement above, was to transfer to appellants an interest in the cause of action in the subject-matter of the suit; for if that was not the effect of that agreement, appellants had no cause of action against H. Fronhoff, and therefore no right to intervene in the pending suit for the purpose of prosecuting it against him on their own account."

In Kansas etc. R. Co. v. Thacher, 17 Kans. 92, where an attorney's lien under the statute phrased as already mentioned was sought to be enforced against the defendant in the original action, a settlement having been made between the attorney's client and defendant without the attorney's knowledge or consent, while a recovery was denied for imperfect service of the notice of the lien, there was an implied sanction of the procedure invoked, i. e. a separate suit, the court saying:

"Where notice of a lien is given, and before trial and judgment the parties settle the case and the suit is dismissed, the attorney may maintain a separate action to recover the amount due upon his lien, and in such action the client is not a necessary party."

In Stearns v. Wollenberg, 51 Ore. 88, 92 Pac. 1079, 14 L. R. A. (N. S.) 1095, taking a different view than set out in the earlier case of Jackson v. Stearns, 48 Ore. 25, 84 Pac. 798, 5 L. R. A. (N. S.) 390, the court said:

"It is argued, and authorities are cited to support the contention, that it has been the practice of the courts to intervene to protect attorneys against settlements made to cheat them out of their costs, and that the proper course for the attorney to pursue is to proceed with the original suit in the name of his client, notwithstanding the collusive settlement for the purpose of collecting his costs. But these are cases where the action was to recover money, and the attorney fees were fixed in definite sums easily determinable by taxation, and this power was

exercised to secure them their fees. Coughlin v. New York C. & H. R. R. Co., 71 N. Y. 443, 27 Am. Rep. 75.''

In De Wandelaer v. Sawdey, 78 Conn. 654, 63 Atl. 446, the syllabus appended to the reported case reflects the decision accurately and reads:

''Under Gen. St. 1902, Sec. 595, 596, providing that the plaintiff in any action may withdraw it at an time before verdict, etc., an action which has been compromised and withdrawn by plaintiff will not be restored to the docket on an application of plaintiff's attorney, alleging that the action was withdrawn to defraud him of his fees and disbursements, but merely showing that when the action was brought, it was orally agreed that so much of the judgment as should be necessary to compensate the attorney for his services and disbursements should be assigned to him.''

See also Kelly v. Smith, (Cal.) 268 Pac. 1057.

The authorities unreservedly concede the right to the client to terminate the relation between himself and his attorney arbitrarily, at his election, with or without cause and with or without reason. 2 R. C. L. 957. This is an implied term of every contract of employment of counsel, at least where the latter is not vested in some way with an interest in the cause of action or its subject-matter. Indeed, where a lawyer's contract with his client prohibits settlement of the litigation without the lawyer's consent, it is generally held that such a covenant is against public policy and void. Kansas City Ry. Co. v. Service, 77 Kan. 316, 94 Pac. 262, 14 L. R. A. (N. S.) 1105; Newport Rolling Mill Co. v. Hall, 147 Ky. 598, 144 S. W. 760, and authorities there cited; Williams v. Ingersoll, 89 N. Y. 508; Davis v. Webber, 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81; North Chicago St. R. R. Co. v. Ackley, 171 Ill. 100, 49 N. E. 222, 44 L. R. A. 177; Lipscomb v. Adams, 193 Mo. 530, 91 S. W. 1046, 112 Am. St. Rep. 500.

234

In Martin v. Camp, 219 N. Y. 170, 114 N. E. 46, where the agreement between counsel and client stipulated that the compensation to be paid the former should be contingent upon success and fixed such sum as a proportion of the amount recovered, and counsel were discharged without cause after performing substantial services, the following language indicates the tenor of the decision:

"If in such a case the client can be compelled to pay damages to his attorney for the breach of the contract, the contract under which a client employs an attorney would not differ from the ordinary contract of employment. In such a case the attorney may recover the reasonable value of the services which he has rendered, but he cannot recover for damages for the breach of contract. The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause. * * * And it follows from this rule, by necessary implication, that, if the client has the right to terminate the contract, he cannot be made liable in damages for doing that which under the contract he has a right to do. * * *

"The rule secures to the attorney the right to recover the reasonable value of the services which he has rendered, and is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential. What has been said declaratory of the rule that the attorney is limited to a recovery upon a *quantum meruit* does not relate to a case where the attorney in entering into such a contract has changed his position or incurred expense, or to a case where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract. The plaintiff's right of action is limited to a recovery for the reasonable value of services rendered."

The same rule had previously been announced in the earlier case of Andrews v. Haas, 214 N. Y. 255, 108 N. E. 423, where it was said:

"The employment of a lawyer to serve for a contingent fee does not make it the client's duty to continue the lawsuit, and thus increase the lawyer's profit. The lawsuit is his own. He may drop it when he will. Even an express agreement to pay damages for dropping it without his lawyer's consent would be against public policy and void. Re Snyder, 190 N. Y. 66, 69, 14 L. R. A. (N. S.) 1101, 123 Am. St. Rep. 533, 82 N. E. 742, 13 Ann. Cas. 441. The law will not imply an agreement which would be illegal, if it were express. It will not, under the coercion of damages, constrain an unwilling suitor to keep a litigation alive for the profit of its officers. Tenney v. Berger, 93 N. Y. 524, 45 Am. Rep. 263; Re Dunn, 205 N. Y. 398, 402, 98 N. E. 914, Ann. Cas. 1913E, 536; Nutt v. Knut, 200 U. S. 12, 21, 50 L. Ed. 348, 353, 26 Sup. Ct. Rep. 216; Mesa County Nat. Bank v. Berry, 24 Colo. App. 487, 135 Pac. 129. The notion that such a thing is possible betrays a strange misconception of the function of the legal profession, and of its duty to society. When the defendants abandoned the action, they became liable to the plaintiff for the value of the services then rendered. That is the measure of their liability and of his right."

See also Wright v. Johnson, 132 Wash. 682, 233 Pac. 16.

In Marquam v. Vachon, 7 Fed. (2d) (C. C. A. 9th Cir.) 607, the attorneys made a contract with Vachon to pay them a sum equal to one-half of the amount that might eventually be collected on any judgment on certain causes of action they were to prosecute for their client. Thereafter, the attorneys having, in the meanwhile, rendered services to a considerable amount, Vachon, secretly and without the knowledge or consent of his counsel and for the purpose of cheating and defrauding them out of the balance due for their services, settled the causes of action with the defendant therein and entered into a written stipulation with it for their dismissal. The attorneys had no knowledge of this stipulation until it was later filed in court, when the actions were dismissed. The attorneys sued the client upon the contract for damages for the breach thereof. In denying recovery, the court said in part:

"The relationship of attorney and client rests upon such confidential and personal elements that it is wise that dissolution may be had at the will of the client, and the decisions go to the extent of holding that the right of the client to dismiss the attorney, whether with or without cause and at any time, is an implied condition of the contract of employment. 2 R. C. L. 957. Therefore dismissal of the attorney, arbitrarily or without cause, does not constitute a breach. The Court of Appeals of New York refers to a number of cases which take a different view, but our inclination is in accord with those which sustain the right of termination at the will of the client, and which hold that, where the client exercises his undoubted right to settle the suit without consulting his attorney, the attorney cannot recover in damages for a breach of contract, but is limited to recovery for the reasonable value of services rendered. Martin v. Camp, 219 N. Y. 170, 114 N. E. 46; Wright v. Johanson, 132 Wash. 682, 233 Pac. 16.

"In the present case, inasmuch as the client had a right to settle and compromise the actions, the averment that the compromise and settlement were made by Vachon for the purpose of defeating payment of attorney's fees is not material. There is no allegation that the settlement itself was not real or proper. The client, in settling without consulting his attorneys, but exercised a right.

"Settlement, however, does not relieve the client of liability for the reasonable value of services rendered by the attorney up to the time of the settlement and the filing of the stipulation for dismissal. The remedy of the attorneys is upon a *quantum meruit*, and not upon the contract.''

In the case at bar it is not alleged in counsel's motion that Enos collusively settled with the defendant, but under the authorities above cited it would hardly seem to make any difference if he had. The claim in the motion is that the defendant and his counsel ''by means of false representations, promises, persuasions and threats of prosecuting plaintiff criminally, fraudulently induced plaintiff to sign the motion for dismissal.'' It is very doubtful whether this statement charges actionable fraud against the defendant and his counsel, but assuming that it does, we fail to see how it aids the attorneys for Enos. Enos had the abso-

lute right, arbitrarily and without cause, to terminate his contract with his attorneys. The fraud or duress asserted was—so it is alleged—practiced upon Enos, but he is not complaining about it. He is still asserting even in this court his undoubted right to dismiss his cause of action. If a client may, without reason or cause, terminate a contract of employment of the character before us, it is difficult to understand why he may not do so though induced by fraud or duress, but of which he does not complain and which he has decided to condone. In short, his attorneys are not concerned with the mainspring of his conduct, for he exercises a legal right. Under such circumstances and under the facts of the case at bar, we think the attorneys— as the authorities above cited hold—are remitted to their remedy against their client for the reasonable value of the services performed. If it be said that a client may be irresponsible, that is, of course, a matter which may result in hardship to counsel, but they may always protect themselves by proper contracts of employment.

We are certainly as desirous as any court could be to protect members of the bar in their relations with their client, but we are not inclined in so doing to maintain and sanction a procedure which we think is a relic of days long since past, employed under circumstances radically different from present-day conditions, and which, with reason, has been declared to be "illogical," "clumsy," arbitrary and devoid of principle.

It follows from what has been said that our conclusion is that the order appealed from should be affirmed.

*Affirmed.*

KIMBALL, J., and METZ, District Judge, concur.

ON PETITION FOR REHEARING

RINER, Justice.

The cases cited by appellants in their petition for rehearing have been examined and we do not consider them to be at all in point here, in so far as they deal with agreements with attorneys for compensation. They are cases where the contract was not executory, as in the matter at bar, but were executed. The distinction is obvious. We cannot perceive that a rehearing would lead to any different result than that already reached in the cause, and accordingly the petition for rehearing is denied.

*Rehearing denied.*

KIMBALL, J., and METZ, District Judge, concur.