**SHARAR v. POLLIA et al.**

No. 4230.

United States Court of Appeals
Tenth Circuit.

July 12, 1951.

David N. Hitchcock, Laramie, Wyo., for appellant.

Carleton A. Lathrop, Cheyenne, Wyo., for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Andrew A. Pollia and six use plaintiffs, one of whom was appellant, J. A. Sharar, brought in the United States District Court for the District of Wyoming against E. C. Nickel, a base contractor, and the Federal Public Housing Authority, to recover for work done and materials furnished under subcontracts with the base contractor. On a former appeal, see Nickel v. Pollia, 10 Cir., 179 F. 2d 160, the judgment was reversed and the cause was remanded with directions to determine the issues in light of the opinion. On the second hearing, the trial court entered judgment August 2, 1950 in favor of Pollia against Nickel for $29,086.36. Nickel paid this amount into the Federal Court September 11, 1950. After the satisfaction of preferred claims against Pollia, there remained of the judgment $19,-701.07 for distribution among the use plain-

tiffs. Judgment was entered for Carleton A. Lathrop in the sum of $7,482.52, in satisfaction of an attorney's lien claim, which the court found in his favor. Judgment was entered for Sharar for $9,701.26 and the remainder went to parties not concerned with this appeal. The appeal by Sharar challenges the correctness of the judgment so far as it affects him.

The following facts are necessary to a consideration of the question presented by the appeal. The federal action by Pollia and the six use plaintiffs against Nickel was filed April 3, 1947. On May 29, 1947 Sharar sued Pollia in the district court of Albany County, Wyoming, seeking a money judgment under his subcontracts with him. A writ of garnishment was served on E. C. Nickel Construction Company,[1] the defendant in this action, requiring the garnishee to answer as to any money or assets in its hands belonging to Pollia by June 18, 1947. On June 3, 1947, the Nickel Construction Company filed an answer, setting out the action pending against it by Pollia in the federal court and further answered that "We are not in a position to make any statements as to monies owing to Andrew A. Pollia by ourselves until the determination of the pending suit in the federal court". On June 17, 1947 a more formal answer was filed by the garnishee setting forth in substance the same facts and stating further, "And until the controversy existing in the action now pending in the United States District Court for the District of Wyoming is finally determined and a judgment entered therefor, your answering garnishee is unable to determine the amount due the plaintiff (Sharar) herein; that when a determination is made in the suit now pending in the United States District Court for the District of Wyoming this answering garnishee will deliver said money into court (United States Court) and have receipts therefor and be discharged from liability to any of the parties for same".

On March 4, 1948 judgment was entered in the state court action against Pollia in favor of Sharar for $9,748.00, with interest

---

1. E. C. Nickel in the federal suit and E. C. Nickel Construction Company in the state action are one and the same.

at seven per cent per annum from November 18, 1946, and costs. As to the garnishee, Nickel Construction Company, the judgment provided: "It is further ordered, adjudged and decreed that Plaintiff has had a lien upon and this court has had constructive custody of all monies, credits, indebtedness and property of every description whatsoever belonging to Defendant (Pollia) to the extent of Plaintiff's claims, costs and interest, in the hands of the Garnishee, E. C. Nickel Construction Company, its successors and assigns, since the service upon said garnishee of the writ of attachment and order and notice of garnishment of May 29, 1947 and that said Garnishee, its successors or assigns shall pay and deliver unto this court by depositing the same with the clerk thereof all such monies, credits, indebtedness and property of any kind whatsoever belonging to defendant which may be in its hands, to the extent of Plaintiff's judgment for $9,748.00, costs and interest thereon as soon as possible after the amount of such property of the Defendant in the hands of said Garnishee, its successors or assigns is or can be determined for the use of Plaintiff and the payment of his judgment hereby entered."

No further steps were taken by Sharar in either the state action or this action to collect his state judgment, until September 22, 1950, when he filed an application for permission to intervene in the federal action. This move was prompted by an order in this case, setting a hearing for September 22, 1950, for considering the manner of the distribution of the proceeds of the judgment. The reason for the further consideration of the distribution of the judgment was made necessary by notice of certain other claims, which had preference in payment out of the judgment. In his petition of intervention, Sharar alleged that he was listed as a use plaintiff without his knowledge. He set out the state action, the garnishment proceedings, his judgment in the state court, asserted a first and prior lien on the judgment in the federal court by reason of his garnishment, asked for the full amount of the state judgment and that he be relieved from any and all provisions of the judgment of the federal court.

In short, Sharar's position is that the garnishment proceeding was an action in rem; that by virtue thereof he acquired a valid first lien on any sums due Pollia from Nickel to the extent of his judgment in the state court; that the federal court had no right to interfere with the "res" in custody of the state court and that by its final judgment it failed to give full faith and credit to the state court judgment.

The authorities are not in accord as to the rights acquired under a garnishment. A distinction is made by some courts between the taking of tangible property and debts. Some courts hold that the right acquired is a lien, others that it creates a quasi lien, an equitable lien, and still others hold that it gives rise only to a contingent personal liability. A detailed discussion of the subject is found in 38 C.J.S., Garnishment, § 181. In view of the conclusions we have reached, it is not necessary to resolve this conflict nor is it important to the decision whether Sharar authorized the use of his name as a use plaintiff in the federal action or knew that he was so joined.

Had Pollia merely sought a personal judgment against Nickel, the situation would have been entirely different. Then the entry of the judgment would have exhausted the court's jurisdiction. The federal court then would have had no concern over the judgment and it would have been subject to garnishment proceedings in another action. Whether, if such proceedings were filed prior to the entry of the judgment, the subsequently entered judgment would be subject thereto need not be decided. In any event, the judgment when finally entered would be subject to garnishment proceedings, because then there would be no interference with the subject matter of the suit. Such facts would have brought the federal action within the decision of the Supreme Court in Huron Holding Corporation v. Lincoln Mine Operating Co., 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725, where the court held that a money judgment in a federal court was subject to garnishment in a state court action. But such is not the case here.

The subject matter of a federal action and of the garnishment phase of the

state action was the same. The primary object of the federal action was to subject Pollia's claim against Nickel first to the satisfaction of Pollia's creditors, who had claims against the fund. So likewise the purpose of the garnishment proceeding was to subject Pollia's claim against Nickel to the satisfaction of one of Pollia's creditors, Sharar, who was also a use plaintiff in the federal action. So considered, both actions were in rem or quasi rem to administer a debt for the benefit of those entitled thereto.

The authorities all hold that in such instances the court first acquiring jurisdiction of the res holds it to the exclusion of all other courts. The federal action was instituted first and the federal court thereby acquired the exclusive jurisdiction to administer the fund.

In Wallace v. McConnell, 13 Pet. 136, 38 U.S. 136, 10 L.Ed. 95, McConnell sued Wallace in the federal court of Alabama on a $4,800.00 note. Thereafter one Blocker and others sued McConnell in the state court and garnisheed Wallace. The Supreme Court held that the jurisdiction of the federal court was exclusive and that "the jurisdiction of the district court of the United States and the right of plaintiff to prosecute his suit in that court, having attached, that right could not be arrested or taken away by the proceedings in another court". The ruling was predicated on the theory that the subject matter of the two suits was the same. To the same effect see Lowenstein v. Levy, 6 Cir., 212 F. 383 and Mack v. Winslow, 6 Cir., 59 F. 316. The Wallace case was before the Supreme Court again in Huron Holding Corporation v. Lincoln Mine Operating Co., 312 U.S. 183, 61 S.Ct. 513, 518, 85 L.Ed. 725. The court distinguished Wallace v. McConnell. In its opinion it stated: "Further, we do not here, as in Wallace v. McConnell, have a case in which two courts are proceeding in the same matter at the same time". In Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456–466, 59 S.Ct. 275, 280, 83 L.Ed. 285, the court said: "We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property".

To grant the relief first sought in the federal court, to marshal assets which consisted of Pollia's claim against Nickel, to determine the amount and priority of all claims and make distribution of the fund accordingly, it was necessary for the court to exercise jurisdiction over the res or the debt. That action being first in time gave the federal court exclusive jurisdiction of the fund and no creditor of Pollia's could acquire rights to the fund by subsequent proceedings in another court.

It is finally contended that the trial court erred in awarding Lathrop an attorney's lien on the judgment. Lathrop was employed to represent Pollia and the use plaintiffs in the federal action. He was employed on a contingent fee basis. The court found the amount of his attorney's fees to be $9,770.86 and prorated his judgment to $7,482.52.

Section 2–116 of Wyoming Compiled Statutes 1945,[2] among others, gives an attorney a lien for services upon money in his hands and money due his clients and in the hands of the adverse party. Since the right to a lien is fixed by the state law, we look only to the Wyoming decisions and do not analyze the cases cited from other jurisdictions. In Anderson v. Star-Blair Oil Co., 34 Wyo. 332, 243 P. 394, the Wyoming Supreme Court held that an attorney had a

2. An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession, in the course of his professional employment, upon money in his hands belonging to his client, and upon money due to his client, and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party".

lien on a money judgment under this statute and that no notice thereof was required to anyone other than the judgment debtor. The distinction which appellant seeks to draw between that case and the one before us is not persuasive. It is further contended that in any event the Anderson case was overruled by the later case of Enos v. Keating, 39 Wyo. 217, 271 P. 6, 275 P. 131, 67 A.L.R. 430. With this we cannot agree. The facts in the two cases are not at all the same as a casual reading thereof will reveal. It is of note that the Wyoming Court did not mention the Anderson case in the later case. This is of some significance especially in view of appellant's statement in its brief that the Anderson case was called to the attention of the Supreme Court in the Enos case. In view of this and the further fact that the Wyoming case seems to us to be distinguishable upon the facts, the presumption must be that the Anderson case is still the law of Wyoming and was not overruled by the Enos case.

We find no reversible error in the record and the judgment is accordingly affirmed.