Ahalt v. Gatewood.

No. 23,232.

B. F. AHALT, *Plaintiff* (NELSON CASE, his attorney, *Appellant*), V. RAWLINGS GATEWOOD, *Defendant* (SOPHIA GATEWOOD, Assignee of Plaintiff), *Appellees*.

### SYLLABUS BY THE COURT.

1. ATTORNEYS' LIEN—*Created Only by Giving Required Statutory Notice.* The statute concerning attorneys' liens supersedes the common law, and furnishes the only means and remedy for securing such lien on a judgment procured by an attorney for his client, and a written notice thereof is essential.

2. SAME—*No Sufficient Notice Given.* The summons in an action on certain notes providing for attorney's fee in case of suit thereon, had indorsed the following:

"Amount claimed $6,617, with interest from August 6, 1906, at 10 per cent per annum, and costs of suit, and $661.70 as attorney's fee for collection."

Below the clerk's signature was the following:

"Nelson Case, Oswego, Attorney for Plaintiff."

*Held,* that such indorsement was not a sufficient notice of an attorney's lien under section 484 of the General Statutes of 1915.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed June 11, 1921. Affirmed.

*Nelson Case,* of Oswego, for the appellant.

*Paul MacCaskill,* and *E. L. Burton,* both of Parsons, for the appellees.

The opinion of the court was delivered by

WEST, J.: In 1906 the defendant Rawlings Gatewood gave the plaintiff, a resident of Oregon, three promissory notes for $6,617, bearing interest at ten per cent. Each note contained a provision that in case of suit to collect it the maker promised "to pay such sum as the court may adjudge reasonable as attorney's fee in said suit or action." The notes were made payable in Oregon.

Nelson Case, in 1907, brought suit on these notes in Labette county, taking judgment for $7,774.65 with interest at ten per cent. The summons was indorsed with the amount sued for

and costs of suit "and $661.70 as attorney's fee for collection"; and below the clerk's signature this indorsement was made: "Nelson Case, Oswego, attorney for plaintiff." The defendant was personally served. In 1908, the plaintiff made proof of his allegations, and the court found generally in favor of the plaintiff and rendered judgment for $7,774.65, with ten per cent interest and costs and an attorney's fee of $300, which it directed to be taxed as part of the costs in the case. Mr. Case appeared as sole attorney for the plaintiff and was never discharged as such attorney and has never received any compensation for his services. In May, 1919, the plaintiff, for $900, assigned this judgment to Sophia Gatewood, the defendant's wife, who had execution issued and sale made and bought in the property for $4,500. She paid in cash only the amount of the court costs, the printer's fee, fee for notice of sale, and the sheriff's fees, amounting in all to $61.91, retaining the balance of the $4,500 to be applied as a credit on the judgment. On June 8, 1919, Mr. Case filed a motion for an order to direct the proper officer to pay him the attorney fee allowed by the court. May 4, 1920, he filed another motion to require the purchaser at sheriff's sale to pay into court the amount of the attorney's fee for his use, and in default of such payment the sale to be set aside. On May 28, 1920, Sophia Gatewood, the purchaser, moved for confirmation. June 11, 1920, Mr. Case combined his two motions into one which he then filed, asking that the sale be not confirmed until the purchaser paid into court a sufficient sum to pay him the attorney fee, and asking, further, that the court require the sheriff to collect and pay into court the amount of such fee for his use, and that otherwise the sale be not confirmed. The three motions were presented at the same time and argued and taken under advisement. Afterwards, the combined motion of Mr. Case was overruled and the motion for confirmation sustained, and from these orders this appeal is taken.

Mr. Case contends that the attorney fee contract was made for his benefit, was one which he can enforce, and that the judgment for such fee, or the fee so allowed by the judgment, belongs to him. He argues that the common law recognizes two classes of attorney's liens, the retaining and the charging; that his lien partakes of the nature of both; and that the statu-

tory lien, which is of later origin, does not supplant or impair the common-law remedy, but is an additional and supplemental remedy. He argues that his lien so far as considered a charging lien is an equitable right to the fee and costs due him for services and that he is regarded as an equitable assignee of the judgment, based on the principle that the plaintiff should not be allowed to appropriate the whole of the judgment without paying for the services of his attorney in obtaining it. He argues, further, that the assignment should not destroy his right to his remedy, and contends that the assignee took subject to the lien of the attorney through whose services the judgment was secured.

The defendant contends that the judgment was not in favor of Mr. Case, but of his client; that the assignment had the effect of ending his employment as attorney in the matter, and that Mr. Case is not a party to this litigation; and further, that he has not complied with the Kansas statute by serving notice of his lien as required.

Of course, strictly speaking, the judgment was in favor of the plaintiff, and not the plaintiff's attorney, although that part now in controversy was expressly termed an attorney's fee in the journal entry, and the summons in the action asked for an attorney's fee.

Whether the assignment ended the matter and whether Mr. Case has a right to be considered a party need not now be determined.

The effect of our statute prohibiting a contract or judgment thereon for attorney's fee embodied in a note or similar instrument is not invoked by either party and will, therefore, not be considered.

The serious and controlling question in the case is whether the right to the fee and lien can be invoked without having complied with our statute. This statute (Gen. Stat. 1915, § 484) provides that—

"An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment, upon money in his hands belonging to his client, and upon money due to his client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party; . . ."

Section 485 provides that—

"Where any judgment has or may be collected or paid to the clerk of any court rendering the same, on execution or otherwise, upon which an attorney's lien is claimed, the court in which such judgment was or is rendered may in term-time, or the judge of said court at chambers, without formal pleadings on application of any party interested, determine the amount due on said attorney's lien, if any, and make an order for the distribution of said moneys according to the respective rights of the parties."

It would seem by the language of section 484 that the legislature must have intended to cover both kinds of common-law liens, the retaining and charging. Of course, an attorney cannot be required to deliver possession of his client's papers or money which have come into his hands in the course of his employment until the client settles with him for his fees. But that matter is not involved here, this being an affirmative action on the part of the attorney to enforce what might be called his charging lien.

The retaining lien is said to be an attorney's right to retain possession of all papers and money of his client coming into his hands professionally until a general balance due him for services is paid. This is said to have been recognized from earliest times. "It is of common-law origin, and the statutes providing for it, and for its enforcement are merely declaratory of the common-law rule." (6 C. J. 766, § 363.)

The special or charging lien is said to be an equitable right to have the fees and costs due the lawyer for his services in an action secured to him out of the judgment therein—

"The attorney, to the extent of such services, being regarded as an equitable assignee of the judgment. It is based on the natural equity that the plaintiff should not be allowed to appropriate the whole of a judgment in his favor without paying thereout for the services of his attorney in obtaining such judgment." (6 C. J. 766, § 364.)

"A retaining lien is complete and effective without notice to any one. On the other hand, as a general rule, a charging lien is not perfected until notice thereof has been given to the obligor against whom it is asserted, unless such person has knowledge of the claim, or has notice of facts sufficient to put a prudent person upon inquiry." (6 C. J. 772, § 370. See, also, 2 R. C. L. 1063, §§ 150-154, and 1069, § 159.)

Whether the statute should be considered merely as providing a remedy to enforce a common-law right or as superseding such right seems to be settled in favor of the latter view. In

their brief in *K. P. Rly. Co. v. Thacher*, 17 Kan. 92, Thacher
& Stephens said: "At common law also, and independent of
the statutes, we insist that the action should be maintained."
(p. 97.)   But the court said: "It is unnecessary to inquire
whether this would have been the rule independent of statute."
(p. 101.)   In *Holmes v. Waymire*, 73 Kan. 104, 84 Pac. 558, it
was said:

"This section is a substitute for, and may be said to be a substantial
enactment of, the common law upon the subject of attorneys' liens."
(p. 105.)

The Indiana supreme court in *Alderman v. Nelson et al.*, 111
Ind. 255, considering a similar enactment, said:

"The statute gives the lien, and to secure it, the statutory provisions
must be pursued with reasonable strictness and accuracy. . . . It
is not necessary to inquire whether an attorney had a lien on his client's
judgment at common law, for the statute covers the entire subject and
creates the lien, and that is the only one that can be enforced. . . .
The statute is now the only source from which the lien is derived, and it
can only exist as the statute creates it." (pp. 257-259.)

The Washington supreme court in *Humptulips Driving Co.
v. Cross*, 65 Wash. 636, said:

"The cases necessarily proceed upon the assumption that the right
of an attorney's lien in this state rests upon the statute, and that there
is no common law or equitable right of lien." (p. 638.)

The Alderman case, *supra*, was quoted from, with approval.

Thornton on Attorneys at Law states that charging liens
are usually regulated by statute.   (p. 970, § 572.)

"In most jurisdictions the attorney's charging lien is provided for and
regulated by legislation; and, of course, where this is true, the statutory
provisions must govern." (*Id.*, p. 979, § 582.)

We hold, therefore, that for a charging lien an attorney
must look to the statute.

In his brief, Mr. Case suggests that the payee had actual
notice of the lien provided for by the notes themselves, and
was also personally served with a summons which not only
stated the claim for the attorney's fee, but gave the name and
address of the attorney prosecuting the suit.   In *Cobbey v.
Dorland*, 50 Neb. 373, there was an indorsement on the sum-
mons that, if the defendant failed to appear and answer, the
plaintiff would "take judgment for $800 together with interest
at 7 per cent . . . and attorney fees and costs of suit."

(p. 375.)   The indorsement was signed by the clerk by his deputy.   The court said this had none of the requisites of a notice of a claim of lien; it did not refer to the attorney, or his fees, was not signed by himself or for him, and did not purport to emanate from him.   In *Smith & Baylies v. The C., R. I. & P. R. Co.,* 56 Iowa, 720, notice of a claim for attorney's lien was indorsed by the plaintiff's attorney on the original notice served upon the defendant.   The court said:

"The statute simply requires the notice to be in writing.   In this respect the notice given conformed to the statute.   It was not a part of the original notice, but was written in a blank space between the parts of the original notice.   If it had been written upon the margin, below the original notice, and properly signed, we think no question could be properly raised as to its sufficiency."   (p. 721.)

"The object of the notice is to protect the judgment debtor, and any notice which serves that purpose will be held sufficient.   All that is required is that the notice shall contain a general statement of the amount claimed, and of the services for which rendered.   The notice must be clear and explicit that a lien is claimed and that payment to the attorney will be required."   (6 C. J. 774, § 375.)

The trouble with the indorsement on this summons is that it was not a notice that the attorney claimed a lien.   At most it indicated a desire to have an attorney fee allowed, only this and nothing more.   Counsel cites *Greek v. McDaniel,* 68 Neb. 569; *Cones v. Brooks,* 60 Neb. 698; *Whitecotton v. Railroad,* 250 Mo. 624; *Barthell v. Railway Co.,* 138 Iowa, 688; *Northrup v. Hayward,* 102 Minn. 307.   In the first case, it was held that the petition of intervention was of itself sufficient notice of the lien so long as it did not appear that the judgment debtor had previously paid the judgment.   In *Cones v. Brooks,* the statute was construed as not to require written notice.   In the Whitecotton case no notice in writing was served, but the court said the defendant did have the notice implied by the bringing of the suit and service of summons, under a certain section of the Missouri statute.   In the Barthell case a notice of the attorney's lien was embodied in the original notice of the action, but it claimed a lien for legal services rendered and to be rendered, the language being:

"You are further notified that the undersigned attorneys claim an attorney's lien of fifty per cent upon the amount due or to become due for legal services rendered and to be rendered."   (p. 689.)

In the Northrup case it was held that the Iowa statute did not require a written notice. These authorities, therefore, do not support the contention that the notice was sufficient, and we have been unable to find those which do. It must be held, therefore, that this notice required by the attorney's lien act was not given in this case, and the claim therefor cannot be sustained.

The judgment is affirmed.