No. 31,714

M. M. JACKSON, *Appellee,* v. MALISSA HALL, Guardian of THOMAS N. GRIBBLE, *Appellant.*

(32 P. 2d 1055.)

Opinion filed June 9, 1934.

*J. W. White, Albert Faulconer, Kirke W. Dale* and *C. L. Swarts,* all of Arkansas City, for the appellant.

*O. Renn* and *George Templar,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal is from a ruling in a foreclosure action with respect to a claimed assignment of rents.

On March 27, 1928, Thomas N. Gribble executed and delivered to Crane-Overholt Investment Company his note for $1,400, due in five years, secured by a mortgage on real estate in Cowley county, Kansas. On April 21, 1930, the mortgagee assigned the note and mortgage to the appellee. A Mr. Crane had been collecting interest on the mortgage for appellee, and about February 1, 1932, Gribble being in default on interest and taxes, Crane and appellee called on Gribble, who was unable to pay. Crane told Gribble he would have to give an assignment of the rents he was spending for other purposes than paying interest and taxes, or foreclosure would be started on the note and mortgage. As a result Gribble executed an instrument headed "Rent Assignment," but which was merely a power of attorney from Gribble to J. E. Crane & Co. to collect from tenants of the mortgaged real estate the monthly rentals due, and to apply such rentals toward principal, interest, taxes, etc., that may be due Jackson (appellee) by reason of the mortgage held by him on the premises, and in case of default in payment of rents Crane & Co. was authorized to take possession of the premises of the tenant in default and to prosecute proceedings for the collection of said rents. The power created was to terminate only when the mortgage was fully paid. There is no showing of any agreement on Jackson's part to forbear bringing suit until any particular time. On June 9, 1932, Gribble was found to be insane by the probate court of Cowley county, and the appellant, Malissa Hall, was appointed as his guardian. About February 1, 1933, the guardian notified Crane & Co. that she desired to revoke the power of attorney and demanded the balance of funds in its hands. Shortly thereafter the foreclosure suit was filed.

On the trial the question in issue was, who was entitled to the moneys remaining in the hands of Crane & Co., and in her brief appellant states the contention as: "Who was entitled to the money Crane collected after Gribble was adjudged insane on June 9, 1933?" (Should be 1932.)

The proof showed that prior to June 9 Crane collected $90 and accounted for $65.50, leaving a balance for that period of $24.50, and for the period after June 9 collected $180, and accounted for

$75.87, leaving a balance for that period of $104.13, the total of the two balances being $128.63. In the period after June 9 Crane paid appellee $42 interest, which exceeds the balance in his hands on June 9, but no complaint is made of that.

Appellant contends that the adjudication of insanity revoked the power of attorney, while appellee contends it was not revoked until the guardian gave notice of her desire to have it terminated and appellee agreed thereto. In support of appellee's contention it is urged that the power of attorney was given as additional security on a valuable consideration, i. e., forbearance to bring foreclosure proceedings, and that it is therefore not revocable without consent of the person benefited, citing 2 C. J. 527 et seq. Appellant answers that there was no sufficient agreement for forbearance for any definite period; that Gribble's power of attorney bound him to do no more than he was already obligated to do; that there was lack of mutuality, and therefore the agency was revocable and was revoked by the finding of Gribble's insanity.

It was held in *Schuler v. Myton*, 48 Kan. 282, 29 Pac. 163, that—

"An agreement to do or the doing of that which a person is already bound to do does not constitute a sufficient consideration for a new promise."

Gribble promised to do nothing he was not already bound to do, to pay his taxes and interest, so consideration did not arise from his agreement. Did Jackson make such an agreement to forbear that had he, prior to Gribble's becoming insane, instituted suit on the note, Gribble could have defended on the ground the time had been extended and thus have given consideration to the agreement? There is no claim made that the agreement was for a definite period, but it is claimed the uncertainty was made certain by reason that he did actually forbear. It would seem the question was in part decided in *Heaton v. Myers*, 115 Kan. 75, 222 Pac. 66, where a debtor in answer to his creditor's demand stated he could not pay then but a little time would help him and he would pay at the rate of $100 per month until the debt was paid, to which the creditor agreed. Default was made after three payments, and the creditor sued. The defense was extension of time of payment. This court said:

"There is no presumption of benefit to the creditor or of detriment to the debtor if a request for forbearance be granted. Benefit and detriment are facts and must appear in the transaction. The creditor is under no obligation to his debtor to take active measures to enforce payment. He may remain passive and preserve his remedies, and he may tell the debtor he will remain passive without losing his remedies. (*The Planters' Bank of Prince George's County*

*v. Sellman,* 2 Gill and Johnson [15 Md.] 230, 234.) In this instance we have nothing but uncompensated forbearance by the creditor." (p. 76.)

(See, also, *Royal v. Lindsay,* 15 Kan. 591, and *Lorimer v. Fairchild,* 68 Kan. 328, 75 Pac. 124, as bearing on the proposition.)

In discussing the question of forbearance, it is said in 8 C. J. 426:

"The elements of certainty, mutuality and consideration are necessary to constitute a valid agreement for an extension of time. It is essential that an agreement for an extension shall constitute a valid and binding contract between the holder and the oher party, precluding him from enforcing payment."

And on page 430 is the following:

"An agreement will not be presumed because of the failure of the holder to sue on the instrument. In other words, mere forbearance to sue, in the absence of an agreement by the holder not to sue, does not amount to an extension of time."

The original petition made no allegations with respect to forbearance, but alleged the execution of the power of attorney and that Crane & Co. had the balance of $129.63 and asked that it be required to pay the money into court and apply it on taxes. During the course of the trial plaintiff asked and was given leave to amend to conform to proof, and he then filed an amendment alleging in substance that on February ——, 1932, he was ready and about to file suit on the note and mortgage; that Gribble was in default on taxes and interest, and—

"That said Gribble and this plaintiff at that time entered into an oral agreement to the effect that if this plaintiff would forego the filing of said suit, that said Gribble would make a rent assignment or power of attorney to J. E. Crane & Company. Said assignment was to be made for the benefit of this plaintiff and was given as further security for the payment of the note, interest and taxes; that the consideration for the making of the power of attorney was the foregoing of the filing of suit by the plaintiff, and that said plaintiff did forego the filing of the said suit because said Gribble made a power of attorney to J. E. Crane & Company, and that the proceeds collected as rents from the property hereinbefore described in the petition were to go to the payment of taxes and interest, and any amount left was to be applied on the principal."

The proof to which this amendment was supposed to conform hardly went that far; it was to the effect if Gribble didn't give the assignment Jackson would file suit. At no place was it alleged nor was it proved that time for payment of the debt, the interest or the taxes, would be extended for any period of time. If Jackson had filed his suit within two months after the power of attorney was given and had Gribble then claimed an extension under an oral

contract such as has been pleaded and proven here, it would have been no defense. It would have lacked certainty and consideration. Such an agreement to be effective must be mutually binding, and the contract here alleged was not.

What was the effect of the insanity of Gribble?

In the Restatement, Agency, are the following:

"The authority of the agent to make the principal a party to a transaction is terminated or suspended upon the happening of an event which deprives the principal of capacity to become a party to the transaction or deprives the agent of capacity to make the principal a party to it." (§ 122.)

"Unless the parties have manifested otherwise to each other, a principal or agent has notice that authority to do an act has terminated or is suspended if he knows, has reason to know, should know, or has been given a notification of the occurrence of an event from which the inference reasonably would be drawn: . . . (c) by either, that the transaction has become impossible of execution because of incapacity of the parties, destruction of the subject matter, or illegality." (§ 134.)

"A third person to whom a principal has manifested that an agent has authority to do an act has notice of the termination of authority when he knows, has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him, that the agent does not consent so to act for the principal, or that the transaction has become impossible." (§ 135.)

(See, also, 2 C. J. 552 and 21 R. C. L. 887.)

The power of attorney in and of itself was not based on any consideration and was revocable by the principal at any time, notwithstanding the statement in it that it was to terminate only when the mortgage was fully paid. Coupled with the claimed agreement to forbear bringing suit, it was not good for reasons hereinbefore given. In that situation, it was revoked by the insanity of the principal. Upon declaration of insanity and appointment of a guardian, it was the duty of the guardian to collect all debts due or becoming due to the ward (R. S. 39-209), and his management of such fund is under control of the probate court (R. S. 39-230).

That portion of the trial court's order made in the foreclosure proceedings, directing that the money in the possession of J. E. Crane & Company in the sum of $128.63 (in some places noted as $129.63) be paid into court and applied on taxes, is reversed. The cause is remanded with instructions that said sum be paid to the guardian.