No. 33,872

R. B. Christy, *Appellee*, v. W. M. Stevens (*Defendant*), The Van Arsdale-Osborne Brokerage Company, Intervenor, *Appellant*.

(79 P. 2d 850)

Opinion filed June 11, 1938.

*Leo T. Gibbens,* of Scott City, *Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, for the appellant.

*John C. Foulks,* of Scott City, and *H. O. Trinkle,* of Garden City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to enjoin the defendant from interfering with the plaintiff's harvesting certain wheat. A company claiming an interest intervened. Judgment was for the defendant, finding him to be the owner of the wheat. Certain liens were declared to be in effect against the wheat. Intervenor appeals from a judgment with reference to one of these liens.

The facts are simple. The petition alleged that the plaintiff was the owner of real estate and that there was a crop of wheat growing on it which was the property of plaintiff, and that the defendant prevented the employees of the plaintiff from harvesting this wheat. The plaintiff alleged that the defendant was insolvent and judgment for damages against him would be unenforceable. An order was asked to prevent defendant from interfering with the employees of plaintiff.

The defendant answered, admitting that plaintiff was the owner of the land in question. He alleged, however, that he was the tenant of plaintiff because of an instrument in writing which recited that

plaintiff had furnished to defendant certain seed wheat to be planted on the land in question as he should be instructed by plaintiff or his agent, and that the understanding was that plaintiff could either pay defendant 50 cents an acre for preparing the ground and 25 cents an acre for drilling the wheat, or he could collect from the defendant the amount expended for seed wheat. The answer alleged that the plaintiff had elected to have the defendant take the wheat crop and pay for the seed wheat.

The reply was that both the defendant and plaintiff had agreed that defendant should be paid for his work and that defendant was not to be a tenant.

On October 13, 1936, before the above answer was filed the brokerage company filed an application for leave to intervene, claiming to have a chattel mortgage on the wheat superior to the lien of plaintiff, and that this chattel mortgage had been given by defendant.

The answer and cross-petition of intervenor alleged that on June 4, 1936, the defendant gave intervenor a note for $162, payable August 1, 1936; that this note was secured by chattel mortgage on the wheat in question; that the consideration therefor was payment for hail insurance on this wheat; that by this chattel mortgage the defendant mortgaged to the intervenor his 75 percent interest in the wheat in question; that this mortgage was recorded on June 12, 1936; that the note and mortgage were unpaid and that the mortgage was a first lien on the wheat harvested on this land for the year 1936.

The court ordered that the wheat be sold by the plaintiff and the proceeds paid into court.

The case was submitted to the court and the issues determined in favor of the defendant. A final judgment of the court ordered the sum in the hands of the clerk of the court to be divided.

In the first place, plaintiff was allowed from the proceeds of the wheat $8.02 on account of the delivery of his own share of the wheat to market, that being the amount of 401 bushels and 10 pounds at 2 cents a bushel, and the further sum of $217.91 paid as a commission on the sale of the wheat, also $141 for storage.

This left a balance in the hands of the clerk of $1,305.64. Of this, one fourth, or $326.41, was ordered paid to the plaintiff for rent, $237.99 was ordered paid to the plaintiff as the balance due him for seed wheat furnished to defendant, and $375 was ordered paid the plaintiff for harvesting the wheat, or a total amount of $947.43 to be paid the plaintiff.

The court then allowed the intervenor a judgment against the defendant upon its cross petition for $185.58, with interest, and ordered that this judgment should be a lien upon any balance of the proceeds of the wheat then in the custody of the clerk of the court by virtue of its mortgage. The court further ordered that the plaintiff should pay the costs of the action except certain costs adjudged to be paid by defendant, and that counsel for defendant should have an attorney's lien for $250 upon the balance of the funds belonging to the defendant, and that this lien should be prior to the mortgage lien of the intervenor.

The intervenor filed a motion for a new trial, which was denied. The notice of the attorney's lien was filed on December 13, 1937, which was subsequent to the entering of the judgment described above. The intervenor appeals from that part of the judgment which made the lien of counsel for defendant prior to the lien of the chattel mortgage.

Our attention is called to the fact that on November 18, 1937, the judgment was entered, and on November 19, 1937, the attorney's fee was paid from this fund. Counsel calls our attention to the fact that no stay bond was furnished by the intervenor to stay the judgment of the court ordering the payment of this money to counsel.

Counsel argues that the failure of the intervenor to furnish a bond to stay proceedings under the judgment of the trial court precludes the intervenor from further contending for this fund. G. S. 1935, 60-3322, is relied on as authority for this contention. We have examined this section and do not find that it requires a stay bond in a case of this sort where the money has been paid into court and is being held awaiting final judgment for its distribution. Furthermore, this money was paid out the next day after judgment was entered and before the motion for a new trial had been heard. The intervenor was under no obligation to act with such speed in order to save its right to appeal.

It is the theory of counsel, who claim the lien, that had it not been for the services rendered by counsel for defendant the intervenor would have had no mortgage rights at all, since the wheat would have been adjudged to have been the property of plaintiff, and if this had been the result of the lawsuit defendant would have had no right in the wheat so that he could have mortgaged it. They ask us to treat this fund as a court of equity, and hold that since they preserved the fund they should be paid out of it.

One answer to this is that the intervenor was on the ground before defendant was. It is reasonable to presume that the services of counsel for intervenor were of some value to the court, that is, counsel for defendant did not, like the marines, win the war alone. The fact is, the mortgage of the intervenor was in force against this wheat and on record at all times during which counsel performed services for defendant. The general rule is announced in 6 C. J. 787, as follows:

"An attorney's lien covers only the interest of the client in the property charged, and is subject to any rights in the property which are valid against the client at the time the lien attaches."

In this case the only right the defendant had in this wheat was inferior to the chattel mortgage on it at the time services were performed by counsel.

See, also, *Columbia Insurance Co. v. Artale*, 112 N. J. Eq. 505, 164 Atl. 864, where the court held in substance:

"Statutory lien given attorney on client's interest in judgment held. acquired subject to existing and known equities.

"Where insured's attorney knew that insurer had purchased mortgage under subrogation agreement in fire policy containing standard mortgagee clause, attorney's lien on judgment recovered for insured against insurer held subject to insurer's right to have mortgage satisfied out of insurance money." (Head-note, ¶¶ 1, 2.)

G. S. 1935, 7-108, provides the means by which an attorney may secure a lien upon a fund in litigation. (See *Ahalt v. Gatewood*, 109 Kan. 328, 198 Pac. 970.) The lien is in effect from the time of the serving of the notice in writing. The notice in this case was served more than a year after the recording of the chattel mortgage. Ordinarily liens take priority in the order of their effective dates. Counsel have not pointed out any reason why such should not be the rule in this case. We hold that the chattel mortgage was superior to the attorney's lien.

The judgment of the trial court is reversed.