No. 47,122

STATE OF KANSAS, *Petitioner*, v. JIMMIE H. DICKENS, *Respondent.*

(519 P. 2d 750)

Opinion filed March 2, 1974.

*Curt Schneider,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the petitioner.

*John William Mahoney,* of Kansas City, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline.

Respondent, Jimmie H. Dickens, took exception to the recommendation of the State Board of Law Examiners (hereinafter referred as the Board) that he be suspended from the practice of law for an indefinite period.

The complaint against respondent was filed by Phillip L. Waisblum, a member of the Missouri Bar engaged in the practice of law in Kansas City, Missouri. Mr. Waisblum was attorney for the estate of Phillip Lindstrom, which at the time of the complaint was being probated by the public administrator in the probate court of Jackson County, Missouri. The matters at issue stem from respondent's representation of Mr. Lindstrom during his lifetime.

In 1967 Mr. Lindstrom was charged with driving while under the influence of intoxicating liquor in Leavenworth following an accident in which he struck and damaged two parked automobiles. Lindstrom retained respondent to represent him in the matter. Respondent arranged bond and subsequently disposed of the charges against Lindstrom. Prior to the disposition of the criminal case in Leavenworth, Lindstrom was sued by State Farm Mutual Insurance Company in a subrogation action to recover damages to the two automobiles which were insured by State Farm. Lindstrom requested respondent to represent him in the defense of the State Farm action and told respondent that he had paid the Ray H. Patterson Insurance Agency of Kansas City, Missouri a premium for the renewal of his automobile liability insurance coverage. Respondent determined that though Lindstrom had paid the premium to his agent Patterson the policy was not renewed because Patterson never remitted payment to State Farm.

During this period of time respondent was associated in an office expense share arrangement with several other Wyandotte County

lawyers, one of whom was Nick Tomasic. On April 8, 1968, a petition was filed in the case of *Lindstrom v. Patterson* in Wyandotte District Court, seeking to recover damages for Patterson's fraudulent failure to remit Lindstrom's premium money to the insurance company. The petition was signed by respondent and Tomasic as attorneys for Lindstrom.

In 1968 respondent, although maintaining his law office in Kansas City, Kansas began to spend extended periods of time away from his Kansas City office because of health reasons. The evidence discloses that for the most part Mr. Tomasic handled the subrogation action in Leavenworth County and the suit against Patterson in Wyandotte County. After the suit was filed in Wyandotte County Tomasic learned that Patterson was essentially judgment proof because of advanced age, no insurance, and poor health. Tomasic testified that he attempted to contact Lindstrom and inform him concerning Patterson's situation, but was unable to locate him. In order to recoup something from the Patterson case, Tomasic negotiated with Patterson's attorneys who finally agreed to settle the case for $750, which they told Tomasic were all the funds that were available. Tomasic testified that he again tried to locate Lindstrom, but was unable to do so and, finally, in June 1969 he learned of Lindstrom's death. Actually, Lindstrom was killed in an automobile accident on April 30, 1969, and his estate was opened in the probate court of Jackson County, Missouri on May 3, 1969.

Waisblum learned of Lindstrom's judgment against Patterson and wrote to Mr. Tomasic concerning the matter on July 24, 1969, and again on December 20, 1969. On December 10, 1969, a settlement check in the amount of $750 was issued payable to Lindstrom, Tomasic and Dickens. Late in January or during February 1970, respondent obtained Tomasic's endorsement on the check. The check was then endorsed by respondent and Lindstrom's name was written on the back of the check, apparently by respondent as his attorney, although Lindstrom was dead at the time. Respondent testified the check was deposited in his trust account, but there was no corroboration of this testimony. Respondent and Tomasic had a fifty-fifty percent contingent fee arrangement with Lindstrom in the Patterson case. After the check was deposited respondent withdrew $750 from the account and paid Tomasic one-half of that sum.

After Waisblum learned that judgment had been entered settling the Patterson case, he wrote to respondent requesting that the funds be paid into the Lindstrom estate. Respondent refused, claiming an attorney's lien. Waisblum also contacted respondent's secretary who excused the matter because of respondent's absence from the city.

Several letters written by Mr. Waisblum or his associate, Mr. Ball, to Dickens's office are reproduced in the record. Waisblum finally secured a copy of the Patterson settlement check from Patterson's attorney. Waisblum then filed a letter of complaint with the probate judge of Jackson County, Missouri who in turn forwarded the letter to the Wyandotte County Bar Grievance Committee, who notified Dickens of the complaint against him. Thereafter Waisblum, on May 27, 1971, wrote a letter to the Kansas State Board of Law Examiners setting out the particulars of the complaint. On January 28, 1972, Dickens mailed a money order to the Jackson County public administrator in the amount of $375 to be credited to Lindstrom's estate. It appears the money order came from funds contributed by respondent and Tomasic, rather than from respondent's trust account.

On October 27, 1972, the Board convened a panel of three members to hear the complaint; respondent appeared *pro se.* In due course, the panel filed a report, findings and recommendations with the Board recommending the indefinite suspension of respondent. The Board received the report of the hearing panel at its meeting on January 5, 1973, and after review thereof approved and adopted the report of the hearing panel as the report of the Board.

On March 6, 1973, the Board filed its report with this court and thereafter respondent filed his exceptions. In its report the Board found respondent had violated the provisions of (Supreme Court Rule No. 501) Disciplinary Rules DR 1-102 (A); DR 7-102 (A); and DR 9-102 (A) and (B) of the Code of Professional Responsibility (209 Kan. lxxiv, lxxxiv, lxxxix.)

The findings of the hearing panel, which were approved by the Board, are as follows:

"1. Respondent, with the foreknowledge of the death of his client, failed to report the fact of death to the court or to opposing counsel.

"2. Respondent, concealing the fact of his client's death, and without the prior authority of his client or of the duly appointed representative of his client's estate, entered into a settlement agreement disposing of the client's cause of action.

"3. Respondent, concealing the fact of his client's death from the court and the defendant and his attorneys, knowingly failed to disclose that which he knew was required by law to be revealed, and fraudulently induced the court to enter judgment disposing of the pending action.

"4. Respondent, concealing the fact of his client's death, and without approval of any party having authority, received payment of the judgment rendered in favor of his client and caused pleadings to be filed disposing of the action.

"5. Respondent, without authority, endorsed the name of his predeceased client to the check given in payment of the client's judgment.

"6. Respondent, without authority, caused all of the proceeds of his deceased client's judgment to be paid into his business account and did retain same until complaint was filed against him with the State Board of Law Examiners, on the basis that the deceased client owed him added amounts as fees.

"7. Respondent refused to respond to inquiries of representatives of his deceased client's estate concerning the client's recovery and failed and refused to pay over the client's share of the judgment after due demand was made.

"8. Respondent failed to make a candid disclosure of the facts of his deceased client's case, of the recovery, or of his possession of his client's moneys until the Public Administrator of Jackson County, Missouri made independent discovery thereof."

The basic thrust of respondent's argument before this court is that the evidence adduced at the hearing is insufficient to support the findings of the Board. Generally, respondent contends that the first four findings are based upon the premise that he had foreknowledge of the death of his client and concealed the fact from the court on the occasions specified in the findings—when the fact is, respondent says, he never knew of Lindstom's death, until August 1971, when he received notification of a complaint filed before the Wyandotte County Bar Association. While there is no direct evidence in the record as to precisely when respondent learned of Lindstrom's death, the record does reflect that respondent was in touch with his office, where the fact of death was certainly known since April 30, 1969, when Tomasic had this information. From the record, respondent's lack of knowledge seems highly improbable. In any event, since respondent was still doing business as a practicing lawyer and maintained an office with a secretary, he has the responsibility for and should have known of the death of his client.

Assuming respondent did not know of Lindstrom's death his failure to adequately keep himself advised of the status of his client is negligence of the legal matter entrusted to him in violation of DR 6-101 (A) (3) (209 Kan. lxxxiv.).

Concerning findings Nos. 5, 6, 7 and 8 respondent contends he

had authority to endorse the check and that he had an attorney's lien upon the funds. Respondent admits, in his brief, that the signature of Lindstrom was endorsed upon the settlement check either by respondent or at his direction, but he contends that as an attorney he had the power to sign his client's name, particularly if he endorsed his own name as he did in this case. Respondent also admits that this authority expires upon the death of a client, but that if the fact of death is unknown respondent would, nevertheless, have the authority to do what he did. In the case of *Pearcy v. First National Bank*, 167 Kan. 696, 208 P. 2d 217, the relationship of attorney and client was said to be one of agency and with respect to an attorney's authority to endorse his client's signature upon a check it was stated:

". . . It may be conceded that there are many occasions where by reason of emergency in protecting the client's rights the attorney might be warranted in signing and cashing a check payable to his client's order, or that he might have a lien on the proceeds which he would have a right to collect and withhold, or that there might be other circumstances warranting an inference he was authorized to endorse and collect the check, but none such are disclosed by the amended petition before us. . . ." (p. 699).

Respondent makes no showing of any emergency here, nor does he claim any specific authorization for endorsing his client's signature. Moreover, the relationship being one of agency, any authority which respondent might have had as agent terminated upon the death of his principal. (*Jackson v. Hall*, 139 Kan. 832, 32 P. 2d 1055; and *Farmer v. Marvin*, 63 Kan. 250, 65 Pac. 221.) Even though respondent, as he claims, had no direct knowledge of Lindstrom's death his neglect in not ascertaining such fact during a period of at least eighteen months is negligence that cannot be tolerated.

With respect to findings Nos. 6, 7 and 8 respondent contends that he had a valid attorney's lien which excused him from his failure to remit the funds to Lindstrom's estate. An attorney's lien is authoried by K. S. A. 7-108 which contemplates two types of liens; a "retaining lien" and a "charging lien." *Grayson v. Pyles*, 184 Kan. 116, 334 P. 2d 341; and *Ahalt v. Gatewood*, 109 Kan. 328, 198 Pac. 970.) Since respondent claimed to hold funds of his client which came into his hands he is asserting a retaining lien. (*Ahalt v. Gatewood*, supra.) At the time respondent received the funds, his client was dead and the attorney-client relationship had terminated. Thus, it may be said that since respondent did not obtain possession of the funds until after the death of Lindstrom, a retaining lien was

never created which could survive. Whether respondent had a lien or not he had a duty to promptly notify his client of the receipt of the funds. (DR 9-102 [B] [1]) See, also, *Voss v. Bachop*, 5 Kan. (2d) * 59. The record is clear that respondent failed during a period of eighteen months to attempt to properly notify his client of the retention of the funds.

Assuming that respondent did not know (which seems unlikely under the circumstances) of his client's death until he received a letter from the Wyandotte Grievance Committee we, nevertheless, find clear and satisfactory proof of acts by him which warrant disciplinary action. There remains the question of the severity of the discipline to administer. After carefully reviewing the facts surrounding the complaints, we believe suspension of respondent from the practice of law for a period of two years is appropriate under the circumstances shown.

IT IS SO ORDERED.