No. 47,381

Boyd Apperson, Individually, Boyd Apperson and William Langley, d/b/a J & J Cattle Company, a co-partnership, *Appellees and Cross-Appellants*, v. Security State Bank, a Corporation, *Appellant*. (Floyd Dotson and Joe R. Bailey, [Defendants]).

(528 P. 2d 1211)

Opinion filed December 7, 1974.

*Forrest E. Short,* of Fort Scott, argued the cause, and *Joel B. Short,* of Short and Short, of Fort Scott, was with him on the brief for the appellant.

*Walter B. Patterson,* of Fort Scott, argued the cause and was on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

KAUL, J.: This action stems from a controversy over the application of funds to a payment on a promissory note executed by Joe R. Bailey (defendant) and payable to Security State Bank of Fort Scott (defendant-appellant).

In 1966 defendant Bailey was the operator of a feed lot near Fort Scott, Kansas. In the fall of 1966 Bailey had 4,000 head of cattle in his feed lot, which were costing him $70,000.00 a month to feed. In addition to feed costs, Bailey testified he had expenses for help, equipment and upkeep. He was receiving $50,000.00 a month from the owners of the cattle—in other words, Bailey was losing money at the rate of more than $20,000.00 per month. In the spring of 1966 Bailey became hard pressed to continue his feed lot operations. He had borrowed to the loan limit from Citizens National Bank of Fort Scott and had other substantial indebtedness. In April 1966 Bailey secured his first loan from defendant Security State Bank (hereafter referred to as Bank). This loan was paid off shortly thereafter. On May 4, 1966, Bailey borrowed $32,828.00 from Bank; signed a six month promissory note due November 4, 1966) in that amount; and executed a security agreement upon 257 head of cattle which Bailey had previously shown to Floyd Dotson, who was president of Bank. In the early part of September 1966 Bank discovered Bailey did not own 176 head of the cattle covered by the security agreement. Bank confronted Bailey with a demand for immediate payment of the May 4 note. Bailey responded by offering Bank a security interest in a substantial amount of farm machinery, which Bailey claimed he owned free and clear. Dotson, for Bank, inspected the machinery and on Bailey's assurances a new security agreement was executed on September 8, 1966, by which Bailey gave Bank a security interest in the machinery. Thereafter Bank discovered that Bailey did not, in fact, own some of the machinery and, further, the part which he did own was encumbered by a prior security agreement. When Bank made

this discovery Bailey was again confronted with a demand for immediate payment of his note. This time Bailey responded by suggesting he could assign certain accounts owed to him by owners who had placed cattle in his feed lot. At this time plaintiffs-appellees had 1,036 head of cattle in Bailey's feed lot. Plaintiffs' cattle were owned one-half by plaintiff Apperson, individually, and one-half by Apperson and his son-in-law, William Langley, doing business as the J & J Cattle Company, a copartnership. For convenience the plaintiffs-appellees will hereafter be referred to as Apperson or plaintiffs. Plaintiffs operated a cattle business and resided near Miami, Oklahoma.

Bailey informed Dotson that he was feeding plaintiffs' cattle under an agreement whereby plaintiffs would pay him $14,000.00 on the first of each month as partial payment against the total feed bill, which was finally to be computed on a basis of twenty-three cents per pound of weight gained by the cattle while they were being fed by Bailey. The $14,000.00 payments were not payments in advance, but were due the first of each month following a month's feeding by Bailey. Plaintiffs' cattle were delivered to Bailey's feed lot in August of 1966 and according to Apperson would have been fed out in January 1967. There is no substantial dispute concerning the arrangements between plaintiffs and Bailey regarding the feeding of the cattle and payments to be made therefore.

The upshot of Bank's last confrontation with Bailey was that Bank drew the two identical assignments in question—one assigning the payments to be made to Bailey by Apperson, individually, and the other assigning payments to be made by Langley. The assignments were executed by Bailey on October 25, 1966. Bank prepared and appended to the assignments a paragraph entitled "Acceptance Of Assignment." Thereafter Bank mailed the assignments to plaintiffs' bank in Miami, Oklahoma.

Omitting the acknowledgement and notarization of Bailey's signature, the assignment of the Apperson feed bill by Bailey and the acknowledgement of the notice and acceptance by Apperson reads as follows:

"ACCEPTANCE

"Existing and future loans to me shall be considered as revolving credit funds and the assignment made herein is collateral security for all indebtedness now existing or which may hereafter exist between me and said Bank. Boyd Apperson, Welch, Okla., is hereby directed to make all payments jointly to Joe R. Bailey and Security State Bank of Fort Scott, Kansas to be applied

Seventy-five Hundred dollars ($7,500.00) due November 1, 1966 and Nine Thousand Five hundred eighty-seven and 23/100 dollars ($9,587.23), for which Joe R. Bailey is indebted to bank at this date and to be applied to loan made subsequent to this date by him, and balance due December 1, 1966. Witness my hand this 25th day of October, 1966.

"/s/ Joe R. Bailey

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"ACCEPTANCE OF ASSIGNMENT

"Receipt is hereby acknowledged of a signed original of the foregoing assignment; said assignment is accepted this ___ day of October, 1966, and I agree to abide by the terms of said assignment insofar to make all payments jointly to Joe R. Bailey and Security State Bank of Fort Scott, Kansas and to pay over funds to the above mentioned parties, November 1, 1966 Seventy-five hundred dollars ($7,500.00) and December 1, 1966, Nine Thousand five hundred eighty-seven and 23/100 dollars ($9,587.23), for funds due Joe R. Bailey for feed bills.

"Boyd Apperson"

An identical assignment of the moneys owed by Langley was executed by Bailey and acknowledged and accepted by Langley.

It is to be noted that the total of the sums set out in the two assignments amounted to $34,176.46, which was stipulated to be the amount of Bailey's loan plus interest due on December 1, 1966.

The exact date of signing the acceptances by Apperson and Langley is not shown in the record, but was apparently done on November 7, 1966, after a telephone conversation between Apperson and Dotson. The acceptances were signed before the payments due Bailey on November 1 were made.

On November 7, 1966, checks were written by Apperson and J & J Cattle Company payable to Bank and Bailey in the amount of $7,000.00 each. The checks were delivered to Bank which credited the sum on Bailey's loan reducing it by $14,000.00.

Bank received no part of the December 1 payments which were made directly to Bailey. Sometime early in December Dotson telephoned Apperson and made inquiry concerning the December 1 payments. In this connection Apperson testified:

"I told him I give them to Joe. He wanted to know how come and I told him he didn't do what he agreed on the others and I wasn't going to give him any more money."

Apperson made several trips to the Bailey feed lot during November and December. Apperson testified that he visited the lot about the middle of December when Bailey told him he was having a hard time getting corn. Apperson observed that Bailey did not have very much corn. On New Year's Day (January 1, 1967)

Apperson and Langley returned to the feed lot. They described the cattle as having shrunk, were in poor condition, and on this occasion they also observed that Bailey was out of corn and had very little silage. Following the New Year's Day inspection, Apperson and Langley moved their cattle to the Jarboe and Cowling feed lot near Parsons. Apperson testified that Bailey told him he had run out of corn the middle of December and that the cattle had not been fed corn after that date. Apperson said the cattle had shrunk ten percent by January 1. Apperson further testified it took three or four weeks to get the cattle back on full feed. The cattle were finally marketed during March and the first half of April 1967.

The petition initiating this litigation was filed on June 2, 1967. Pertinent allegations are as follows:

"3. Said assignments created revolving credit funds and were to be used to purchase cattle feed to feed plaintiffs' cattle. On November 7, 1966, plaintiffs paid to the defendants the sum of $14,000.00 to purchase cattle feed.

"4. The defendants, Security State Bank and its President, Floyd Dotson, instead of placing said $14,000.00 in said revolving credit funds, immediately applied said money to unmatured indebtedness due from the defendant, Joe R. Bailey, to said bank.

"5. By reason of the wrongful converting of said money by said bank and its President, the said Joe R. Bailey was unable to purchase cattle feed and the said defendant, Joe R. Bailey, was unable to and did not properly feed plaintiffs' cattle to their loss and damage, and thereafter it became necessary for the plaintiffs to remove their cattle from the feed lots of the defendant, Joe R. Bailey.

"6. The defendants, and each of them, negligently and carelessly failed to look after plaintiffs' cattle, all to their loss and damage.

"7. By reason of the premises herein, plaintiffs have been damaged in the sum of $35,000.00."

Defendants (Bank and Dotson) filed an answer with the assignments attached as exhibits "A" and "B." Defendants specifically denied that the funds in question were to be used to purchase feed to be fed to plaintiffs' cattle, but, to the contrary, alleged the funds received by Bank were to be applied to indebtedness due Bank from Bailey, assignor, pursuant to terms of the assignments. Defendants also specifically denied that the $14,000.00 paid November 7, 1966, was to purchase cattle feed, and further denied that any moneys due from Bailey were applied to unmatured indebtedness due Bank from Bailey.

Defendant Bailey did not file an answer or appear in the action and was dropped as a party defendant at the pretrial conference held in March 1968.

The pretrial order discloses the gist of plaintiffs' theory of their case to be:

". . . [T]hat upon reading the assignments Boyd Apperson called Floyd Dotson and was informed that a revolving credit fund was being set up in the Security State Bank under these assignments for the purpose of providing funds to feed plaintiffs' cattle, and that in reliance on this conversation and on the written assignments the plaintiffs paid $14,000.00 to Joe R. Bailey and Security State Bank; that the Security State Bank upon receipt of the $14,000.00 applied the money to an indebtedness due from Bailey to the Bank; that this amounted to an unlawful conversion of the money; that because of this conversion Bailey was unable to feed the plaintiffs' cattle and that as a direct result thereof the plaintiffs have sustained losses and damage. . . ."

The pretrial order further disclosed that plaintiffs claimed actual damages in the amount of $30,428.06, computed on the basis of the cost of the cattle plus feed and handling less the sale price.

According to the pretrial order defendants contended that no special fund was ever created or ever intended to be created for the feeding of plaintiffs' particular cattle, that Bailey executed the assignments as collateral security for his existing indebtedness to the Bank. Defendants denied there was any conversion and, further, *contended there was no consideration for the alleged promise* which defendants contend was made by Dotson.

The case was tried to a jury which returned a general verdict against Bank in the amount of $20,898.44. The jury found for defendant Dotson.

Bank filed a posttrial motion entitled "Motion To Amend Judgment, Or, In The Alternative, For New Trial." The trial court reduced the verdict in the sum of $6,340.31 from which plaintiffs have taken a cross-appeal. In all other respects Bank's motion was overruled. Although not included in the title, the motion of Bank asked the court to enter judgment for Bank, notwithstanding the verdict on the ground that the court had erroneously overruled defendant's motion for a directed verdict. The motion detailed the grounds upon which Bank claimed its motion for a directed verdict should have been sustained; in particular, that there was no evidence showing that Bank received any consideration for the alleged oral agreement on November 7 that additional credit would be extended to Bailey; and, further, in the alternative that if such agreement was established there was no evidence that Bank was ever requested to extend further credit to Bailey. Bank further alleged, in its motion, that there was no evidence establishing a proximate or causal relation between the payment on November 7

of the $14,000.00 on Bailey's overdue note and the subsequent failure of Bailey to properly feed and care for plaintiffs' cattle.

Turning to the issues raised on appeal, we observe at the outset that because of the manner in which this case was tried below and the posture in which it is presented on appeal, it is quite difficult to ascertain to any degree of certainty the precise position of the parties both at trial and on appeal. For example, plaintiffs devote a considerable portion of their brief to the proposition that lack of consideration is not an issue in the case because it is an affirmative defense, was not pleaded and was neither raised nor mentioned in the pretrial order. As we have previously noted, the issue of "lack of consideration" was specifically fingered in the pretrial order and strenuously urged as a ground for judgment notwithstanding the verdict in Bank's posttrial motion.

Orders entered at pretrial conference have the full force of other orders of the court and, unless modified to prevent manifest injustice, they control the subsequent course of the action. (*Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 457 P. 2d 1; *Trimble, Administrator v. Coleman Co., Inc.*, 200 Kan. 350, 437 P. 2d 219; and *Brown v. Hardin*, 197 Kan. 517, 419 P. 2d 912.)

In their briefs on appeal the parties cannot agree as to the nature of the action. Bank says it is an action on an oral contract. On the other hand, plaintiffs say no it is an action on an assignment prepared by Dotson by which plaintiffs were to pay Bank sums due Bailey for feeding plaintiffs' cattle and in consideration therefore Bank was to create a revolving or special fund for the purpose of feeding plaintiffs' cattle. In this connection the only reference, in the assignments, to a revolving credit fund appears in the first sentence thereof as follows:

"Existing and future loans to me shall be considered as revolving credit funds and the assignment made herein is collateral security for all indebtedness now existing or which may hereafter exist between me and said Bank. . . ."

Reading the language of the assignment in the light most favorable to plaintiffs, which we are compelled to do, we find nothing therein which could be interpreted as meaning that on receipt of the assigned payments Bank would establish a special or revolving fund for the purpose of buying feed for plaintiffs' specific cattle. By the plain language of the assignments Bank promises only that existing and future loans to Bailey shall be considered as revolving credit funds. Thus, to bring into being the contract which they claim exists,

plaintiffs must resort to oral promises claimed to have been made by Dotson to Apperson in their telephone conversation on November 7.

Notwithstanding their statement of the nature of the case, plaintiffs appear to concede that their position must stand in part, at least, upon an oral contract, because of references in their brief to the oral explanation of Bank and the statement that:

". . . The bank contrary to said assignments and said oral agreement converted the $14,000.00 to its own use and benefit contrary to law. . . ."

Thus, we are convinced the case must be considered as an action upon an oral contract to relend the $14,000.00 to Bailey or to establish a special credit fund in accordance with plaintiffs'. interpretation of the written assignments.

Plaintiffs' theory of the case seems to be that Bank's failure to relend the $14,000.00 to Bailey or to establish a special fund was in violation of its oral promise to Apperson and, therefore, amounted to a wrongful conversion of the funds and, thus, Bank becomes liable to plaintiffs for damages which they claim were sustained by reason thereof.

Neither is the position of Bank on appeal easily defined in all respects. Bank specifies several points and devotes a considerable portion of its brief to arguments claiming error in the trial court's refusal to submit several requested instructions. Plaintiffs respond by claiming no question is before us in this regard because of Bank's failure to make a specific objection to the trial court's failure to submit the requested instructions as required by K. S. A. 60-251 (*b*). Bank's requested instructions are reproduced, but the record is void of any specific objections by Bank in this regard. Plaintiffs state this court has not dealt with the matter and support their argument with federal decisions under Federal Rule No. 51 (2 Barron and Holtzoff, Federal Practice and Procedure [Rules Edition], § 1103, p. 450). The fact is—this court has dealt with 60-250 (*b*) in this precise context in *Bott v. Wendler*, 203 Kan. 212, 453 P. 2d 100, wherein it was stated:

"In short, it takes more than a request for an instruction before a party may have appellate review of its propriety. He must raise objection to the failure of the district court to give the instruction when the court entertains objections to its instructions to the jury before the jury retires to consider its verdict. . . ." (p. 223.)

See, also, *Williams v. Benefit Trust Life Ins. Co.*, 200 Kan. 51, 434 P. 2d 765; and *Sanford v. Smith*, 196 Kan. 538, 413 P. 2d 95.

Likewise, as plaintiffs point out, the record fails to disclose the grounds of bank's objections to the instructions given. No claim is made that any orders of the court concerning instructions were clearly erroneous.

In view of what has been said it appears Bank has failed to preserve for appellate review claimed errors with regard to instructions.

Plaintiffs also assert that Bank's contentions concerning the trial court's overruling of its motion for a directed verdict are not properly before us because the record fails to disclose that Bank stated the specific grounds therefor as required by K. S. A. 60-250 (a) which reads in part:

". . . A motion for a directed verdict shall state the specific grounds therefor. . . ."

The only reference to Bank's motion for a directed verdict appears in the record as follows:

"Defendant Security State Bank's motion for directed verdict in its favor, made at the conclusion of the evidence, was denied."

However, we believe Bank's claim of error in this regard was preserved for appellate review by reason of K. S. A. 60-250 (b) which reads in pertinent part:

"*Reservation of decision on motion.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. A party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; . . ."

As we have previously noted, Bank in its posttrial motion did ask for judgment notwithstanding the verdict on the ground that the court erroneously overruled Bank's motion for a directed verdict and did spell out in detail the reasons upon which Bank based its contentions that its motion should have been sustained. The statute was enacted to facilitate the orderly administration of justice with dispatch. It allows the trial to proceed to a conclusion when the judge is permitted to reconsider these motions. The standards to be used in measuring a defendant's motion for a directed verdict or for a judgment notwithstanding the verdict are the same. The question being whether there is any substantial evidence to sustain the verdict. In considering the question the trial court is required to view the evidence in the light most favorable to the party against whom the motion is made. The same rules govern appellate review

by an appellate court on appeal. (*Fisher v. Sears, Roebuck & Co.,* 207 Kan. 493, 485 P. 2d 1309.)

In its first four points on appeal, all of which are directed at the trial court's failure to sustain its motion for a directed verdict, Bank reasserts the reasons spelled out in its posttrial motion. We believe two of the points have merit and are determinative of this appeal.

Bank first claims the trial court erred in refusing to direct a verdict in its favor when plaintiffs' evidence conclusively established that Bank received no consideration for its alleged oral promise to extend additional credit to Bailey. Before discussing the point it should be said that under familiar rules governing appellate review we are bound to view the jury's general verdict as embodying therein a finding that the oral contract was entered into as claimed by plaintiffs. The only evidence appearing in the record upon which the jury could have made its finding of an oral contract is the testimony of Apperson and Jerry H. Hunter, an officer of the First National Bank of Miami, Oklahoma, where plaintiffs did their banking business. Apperson's testimony relating to his conversation with Dotson on November 7, 1966, is reproduced in the record as follows:

"He (Dotson) told me if we would make these checks out to him and Joe Bailey he would in turn turn around and lend—let Joe have more money to buy feed to feed these cattle. The same amount we paid him."

Mr. Hunter testified that he received the assignments by mail from Bank; that a few days after receiving them he had a telephone conversation with Dotson. When interrogated concerning what Dotson said about the revolving credit fund, Hunter testified:

"Yes. The revolving credit fund was to buy corn. The assignment itself was feed bills owed to Mr. Bailey by Apperson and Langley and the assignment of these feed bills was to pay for loans that were to buy corn to feed their cattle and the revolving credit indicated—

"[*Unless the loans were paid—when they paid their feed bill and paid Mr. Bailey's corn bill and he paid his loan at the bank Mr. Bailey could borrow more money to buy corn to be fed to the cattle.*]"

Since the jury apparently believed Apperson rather than Dotson, we take Apperson's version to be the oral contract between the parties. Bank says that the oral contract even if found to exist, as it was, is unenforceable because there is no evidence of any new consideration passing to Bank which could be considered as given in exchange for Bank's alleged promise. Since plaintiffs were already obligated to pay Bailey $14,000.00 on or about November 1, 1966,

for feeding their cattle during October, the payment of such amount to Bank on Bailey's assignments could not constitute consideration for a separate promise by Bank to lend Bailey additional money.

It is an elementary principle of law that to be enforceable a contract must be based upon valuable consideration. It is also the rule in this jurisdiction that an agreement to do or the doing of that which a person is already bound to do does not constitute a sufficient consideration for a new promise. (*In re Estate of Dahn*, 204 Kan. 535, 464 P. 2d 238; *Jackson v. Hall*, 139 Kan. 832, 32 P. 2d 1055; and *Schuler v. Myton*, 48 Kan. 282, 29 Pac. 163.)

Plaintiffs promised to do nothing which they were not already bound to do. On November 1, 1966, they were bound to pay to Bailey $14,000.00. Upon notice of the assignment they were bound to pay the sum to Bank. Consent to an assignment is not necessary to bind a debtor with notice. (*Brown v. East Side National Bank*, 196 Kan. 372, 411 P. 2d 605; and 6 Am. Jur. 2d, Assignments, § 88, p. 269.) We conclude there was no valuable consideration to support the oral contract between Bank and plaintiffs and, thus, it is unenforceable.

This court has recognized an exception to the application of the general rule, stated above, in a case where the assignee has sought an acceptance by the debtor and the debtor in turn has required the performance of a condition precedent before becoming bound by the assignment. This was the case in *Brown v. East Side National Bank*, supra. There Brown (debtor) had entered into a construction contract for additions and improvements to his home with Bontz (assignor). Bontz approached East Side Bank for a construction loan and offered construction contract payments due from Brown as collateral. Bontz asked Brown several times to sign an accepetance of the assignment to East Side Bank. Finally Brown agreed but insisted that " 'Subject to performance bond to cover said contract.' " be written on Brown's acceptance of the assignment. This was done. East Side Bank then made the loan to Bontz. Bontz never furnished a performance bond. Later a payment was made in the amount of $8,000.00 by a check payable jointly to Bontz and the East Side Bank. Bontz delivered the check to East Side Bank which reduced Bontz's loan of $6,000.00, and surrendered the $2,000.00 balance to Bontz. Bontz defaulted on his contract. Brown (debtor) sued East Side Bank (assignee) to recover the $8,000.00 on the theory that since East Side Bank agreed with Brown that it would accept the assignment of Brown's money only on the condition that Bontz

furnish a performance bond, East Side Bank had no right to accept the check. In a jury trial Brown recovered a judgment for $8,000.00 against East Side Bank. On appeal we said in our opinion:

". . . The Bank had no right to accept the check unless Bontz obtained a performance bond. Having *wrongfully cashed the check, to which it had no right under its agreement with the Browns,* and appropriated the proceeds to its own use by crediting the note of Bontz, the Bank is in no position to say that it should not return the money to the Browns." (p. 375.) (Emphasis supplied.)

The gist of the *Brown* holding is that where an assignment made by a debtor is conditioned upon the performance of a condition precedent, the assignor has no right to accept the assigned money until performance of the condition precedent.

In the instant case, assuming *arguendo*, there was consideration and taking the broadest view possible of plaintiffs' evidence, their arguments and statement of position, Bank had a right to accept the checks from plaintiffs. Bank's fault, under any theory advanced by plaintiffs, was its failure to relend to Bailey or to create a special fund. This is not a case such as *Brown* where the assignee had no right to accept the assigned money in the first place. There is no unfulfilled condition, as in *Brown*, barring Bank from rightfully accepting plaintiffs' checks. Brown, the debtor, was not obligated to pay East Side Bank the assigned money until the condition was performed. There was no question of lack of consideration because East Side Bank could not make the loan to Bontz, absent the securing by Bontz of an acceptance by Brown of the assignment. In the instant case the loan was in existence, plaintiffs were obligated to pay Bailey and on notice of the assignment became obligated to pay Bank. Whether the oral promise obligated Bank to relend to Bailey or create a special fund, plaintiffs in return did not promise, nor did they do anything which they were not obligated to do, thus there was no consideration to support an oral contract.

We do not rest our decision on lack of consideration alone. Defendant specifies a point and strenuously argues in support thereof that the trial court erred in refusing to direct a verdict on the additional ground that the evidence failed to show any causal connection between Bailey's payment of $14,000.00, on his overdue note on November 7, 1966, and the damage claimed by plaintiffs.

It is a fundamental principle of law that recovery may not be had where it is not shown with reasonable certainty that damage was suffered and that such damage resulted from the act or omission

complained of. (25 C. J. S., Damages, § 27, p. 683; 22 Am. Jur. 2d, Damages, §§ 20, 21, pp. 37-39; *Hogan v. Santa Fe Trail Transportation Co.*, 148 Kan. 720, 85 P. 2d 28; *Altman v. Miller*, 128 Kan. 120, 276 Pac. 289; and *Railway Co. v. Thomas*, 70 Kan. 409, 78 Pac. 861.) Bailey's undisputed testimony was that he was losing money at the rate of more than $20,000.00 per month and that he was in debt over $160,000.00 in addition to his debt to Bank. There is no evidence that a new loan of $14,000.00 on November 7 would have enabled him to feed plaintiffs' cattle during the last half of December even if it had been earmarked for that specific purpose. To draw such an inference from the record before us would amount to speculation and conjecture and would be contingent upon a number of factors. The fact is that plaintiffs paid Bailey $14,000.00 on December 1, yet Bailey was unable to continue feeding corn to plaintiffs' cattle after December 15. Plaintiffs make no claim that Bank itself promised to feed or care for their cattle or to see that Bailey properly fed them and there is no evidence to that effect. There is no evidence that plaintiffs' decision to leave their cattle on Bailey's feed lot was either influenced or induced by any act or omission of Bank. The undisputed evidence is that plaintiffs and Bailey knew in November that Bank was not going to lend Bailey any additional money. Plaintiffs' claim is simply that Bank's failure to relend $14,000.00 to Bailey on November 7 somehow brought about the damage to their cattle suffered after December 15, 1966. There is no showing to a reasonable certainty that any act or omission on the part of Bank caused the damage which plaintiffs claim they have suffered.

For the foregoing reasons we hold the trial court erred in failing to sustain Bank's motion for judgment notwithstanding the verdict.

In view of our disposition of the appeal, the issues raised by plaintiffs' cross-appeal are moot and need not be considered.

The judgment is reversed with directions to enter judgment for defendant Bank.

SCHROEDER, FONTRON and FROMMIE, J. J., dissenting.